BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORPORATION ARBITRATION LITIGATION | ) ) ) | MDL No. ______ |

CA 06-1125

**_VELIZ_ PLAINTIFFS' EMERGENCY REQUEST TO EXPEDITE RESOLUTION OF TRANSFER MOTION UNDER 28 U.S.C. §1407**

## I. Introduction

On March 31, 2006, Petitioners Paul Veliz, *et al.* filed a motion with the Judicial Panel on Multidistrict Litigation seeking to have 70 recently-filed federal district court cases transferred to and consolidated with the class and collective action entitled *Paul Veliz, et al. v. Cintas Corporation*, No. 03-1180 SBA (the "*Veliz* Action") that has been pending in the Northern District of California since the spring of 2003. Petitioners now request for expediting resolution of their transfer and consolidation motion to promote the interests of justice and to preserve the underlying issues for decision in the proper forum.[1]

1. As Petitioners set forth in the motion filed on March 31, 2006, the case for transfer and consolidation is clear. As explained below, the need for expedited action is urgent. All 70 cases that Petitioners are asking the Panel to transfer and consolidate with the *Veliz* Action involve identical issues concerning Petitioners' legal and contractual right to participate in an ***existing*** arbitration pending in the Northern District of California.[2] Significantly, Cintas filed these 70 new

---

[1] Petitioners file this application to shorten time consistent with similar provisions under Rule of Procedure 6.2 of the Judicial Panel on Multidistrict Litigation, which allows the Panel to adjust the briefing schedule on a motion to transfer and consolidate under 29 U.S.C. §1407. Rule 7.2(h) also permits the Panel to set an accelerated briefing schedule in appropriate circumstances. Pursuant to Rule 16.1(b), Petitioners previously filed with their original motion a separate statement of Reasons Why Oral Argument Should Not Be Heard. Should it be determined that oral argument will be heard in this matter, Petitioners respectfully request that any such oral argument be heard at the earliest date convenient to the Panel.

[2] On May 4, 2004, the original 55 *Veliz* plaintiffs who were compelled to arbitrate under the *Veliz* Court's April 5, 2004 Order Compelling Arbitration initiated a class/collective arbitration of their overtime claims before the American Arbitration Association ("AAA"), under its Supplementary Rules for Class Arbitration. *See* Arbitration Demand, AAA Case No. 11 160 01323 04. Declaration of Michael Rubin in Support of the *Veliz* Plaintiffs' Motion to Transfer and Consolidate Actions Pursuant to 28 U.S.C. §1407 ("Rubin Decl."), Ex. 12. In their arbitration demand, plaintiffs stated that they were proceeding on their own behalf and on behalf of all similarly-situated Cintas employees who were, or would be, required to arbitrate those claims pursuant to Judge Armstrong's analysis of the Cintas arbitration agreements. In the summer of 2004, plaintiffs and Cintas jointly selected the Hon. Bruce Meyerson, a retired judge of the Arizona Court of Appeals, as the arbitrator. Petitioners include over 1,880 individual plaintiffs who joined the *Veliz*

cases, seeking to compel Petitioners to arbitrate in 70 different judicial districts ***after*** Judge Saundra Brown Armstrong in the *Veliz* Action had already issued her rulings concerning the enforceability of the parties' arbitration agreements, ***after*** an arbitration had already been initiated before the American Arbitration Association ("AAA") following Judge Armstrong's ruling compelling the initial 55 plaintiffs to arbitrate their overtime claims in the *Veliz* Action, ***after*** an arbitrator had already been selected jointly with Cintas, and ***after*** Petitioners had already filed a "clause construction" motion with the arbitrator (seeking a ruling that the parties' arbitration agreements permit ***all*** arbitrating plaintiffs to pursue their class and collective overtime claims against Cintas in a single arbitration proceeding governed by the AAA's Supplementary Rules on Class Arbitration). Rubin Decl., Exs. 10-14. While Petitioners' clause construction motion was pending before the arbitrator in the Northern District, Cintas, on or about March 10, 2006, filed the 70 cases, naming as defendants the very same plaintiffs whose claims are proceeding in the *Veliz* Action[3] and who have joined in the existing arbitration, thereby seeking to have district courts in 70 newly-filed cases separately address the very issue already presently pending before the arbitrator – all in a blatant effort to disrupt and interfere with the arbitrator's ability to reach and decided the pending issues and to harass and intimidate plaintiffs. Cintas has begun serving the newly filed actions on Petitioners and the time for responding to these cases has started to run.

---

Action in order to challenge Cintas Corporation's failure to pay them overtime in violation of the Fair Labor Standards Act ("FLSA") and state laws, and its violations of ERISA. On the basis of Judge Armstrong's earlier ruling compelling the original 55 plaintiffs to arbitration and the parties' subsequent stipulation, an additional 47 plaintiffs were compelled to arbitrate under FAA §4 in the Northern District of California, 102 of the Petitioners are in arbitration pursuant to orders compelling them to arbitrate. The remaining Petitioners include 483 Cintas workers whose claims are all proceeding in court, and over 1,880 Cintas workers whose non-ERISA claims have been stayed pending arbitration under FAA §3.

[3] All Petitioners' ERISA claims are continuing to be litigated in the *Veliz* Action, because those claims are not subject to arbitration under Cintas' employment agreements.

Not only does Cintas assert identical allegations in each of the 70 actions to compel arbitration, but the *Veliz* plaintiffs will assert identical arguments on motions to dismiss, strike, stay or abate those actions. The *Veliz* plaintiffs will also have to secure local counsel in dozens of courts to litigate these matters. There is a high risk of defaults and other procedural problems if these cases are not immediately consolidated. And without doubt, as this litigation expands exponentially, the risk of inconsistent rulings will be magnified and the efficient management of the *Veliz* Action will be destroyed. In order to halt Cintas' wasteful, duplicative and harassing litigation tactics, Petitioners move the Panel to expedite the schedule for resolving their motion to transfer so as to avoid a potential miscarriage of justice and so as to preserve the arbitrator's ability to decide the underlying issues.

## II. Expedited Review Is Necessary to Prevent 70 New Cases From Pre-Empting Issues Properly Before an Already Existing Arbitration Proceeding

As noted above, the very same issues set for hearing before the agreed upon Arbitrator are also being presented in the 70 cases that Cintas has filed and which are the subject of Petitioners' motion for transfer and consolidation. Under the AAA's Supplementary Rules for Class Arbitration – which apply to the AAA proceedings in the pending arbitration before Arbitrator Meyerson – the first stage of the arbitration is the "clause construction" stage, at which time the arbitrator determines, "as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Rules for Class Arbitration, Rule 3.[4]

---

[4] The AAA Supplementary Rules for Class Arbitration provide for the arbitration to proceed in three phases: (1) clause construction; (2) class certification; and (3) adjudication of the merits. After the first and second phases, any party may seek to confirm or vacate the arbitrator's partial final award. After arbitration is completed on the merits, any party could, of course, petition a court to confirm or vacate the final arbitration award.

On February 9, 2006, the *Veliz* Arbitration claimants initiated the clause construction phase of the arbitration, on their own behalf and on behalf of all similarly-situated current and former Cintas employees, by filing a motion and a brief setting forth the reasons why the Cintas arbitration agreements permit the arbitration to proceed on a class and collective basis.[5] In their clause construction brief, the *Veliz* Arbitration claimants demonstrated why ***all*** opt-in plaintiffs in the *Veliz* Action who have arbitrable overtime claims are lawfully and contractually entitled to participate in the *Veliz* Arbitration. The *Veliz* Arbitration claimants sought to have this issue resolved quickly, but Cintas protested that it needed an extended briefing schedule to address this matter and asked that its opposition to this clause construction motion not be due until April 7, 2006. *See* Mark Dosker's February 17, 2006 e-mail from Mark Dosker, counsel for Cintas, to Arbitrator Bruce Meyerson (attached hereto as Ex. A). After a telephonic conference with the Arbitrator, Cintas was given until April 7, 2006 to file any cross motion regarding clause construction; the parties' oppositions to pending motions are due April 28, 2006, and the hearing date is set for May 9, 2006. *See* March 2, 2006 e-mail schedule from Arbitrator Bruce Meyerson (attached hereto as Ex. B).

Rather than prepare its response in connection with the clause construction briefing in arbitration, Cintas prepared and filed the 70 federal cases in an effort to sabotage Petitioners' right to have Arbitrator Meyerson address this issue and to have their claims resolved in pending collective/class action arbitration. By filing these 70 cases, Cintas wants these federal courts to compel arbitration in the local districts before Arbitrator Meyerson has a chance to hear and resolve the question of whether Petitioners' claims can be arbitrated in pending arbitration in the Northern District of California. Petitioners submit that expedited resolution of their motion to transfer and

---

5 Claimants also pointed out that, technically, the AAA Rules do not even require this procedure for "collective" actions under the FLSA; and we further note that Judge Armstrong has already provisionally certified *Veliz* as an FLSA collective action under 29 U.S.C. §216(b).

consolidate is warranted in order to prevent Cintas from utilizing the 70 federal court cases to moot and interfere with the issues pending decision in the already agreed upon arbitration.

**III. Expedited Resolution Is Needed to Avoid Wasteful, Duplicative Actions Conflicting With the Primary Action**

By filing 70 identical cases, Cintas is initiating frivolous and wasteful duplicative litigation.[6] Moreover, Cintas' end-run around the already-commenced arbitration proceedings before the agreed-upon arbitrator in the Northern District of California is not only a transparent attempt to harass and intimidate plaintiffs and astronomically drive up costs of litigation, but is also in direct contravention of the law. It is well-settled that an action to compel arbitration under the FAA accrues ***only*** when a respondent unequivocally refuses to arbitrate. *Kim v. Colorall Technologies, Inc.*, No. C-00-1959-VRW, 2000 U.S. Dist. LEXIS 12321, at *2 (N.D. Cal. Aug. 18, 2000) ("The Ninth Circuit has held that a prerequisite to accrual of a cause of action under section 4 of the Federal Arbitration Act is a respondent's unequivocal refusal to arbitrate."); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1065 (3d Cir. 1995) (same); *Broadcort Capital Corp. v. Dutcher*, 859 F. Supp. 1517, 1520 (S.D.N.Y. 1994) (where party agrees to arbitrate in one venue opposing party is not "aggrieved" for purposes of §4 because that party will not arbitrate in a different venue); *Aaacon Auto Transport, Inc. v. Barnes*, 603 F. Supp. 1347, 1349 (S.D.N.Y. 1985) (a party must be

---

6 Each of the Arbitration Actions involves identical allegations by Cintas against the defendants, who are plaintiffs in the *Veliz* Action and claimants in the *Veliz* Arbitration. In each of the Arbitration Actions, Cintas makes the same allegation that the employees are violating their arbitration agreements with Cintas by arbitrating collectively before Arbitrator Meyerson in San Francisco, and Cintas seeks in each action to require those employees to arbitrate their FLSA and state-law overtime claims – *i.e.*, the claims those same individuals assert against Cintas in the *Veliz* Action and *Veliz* Arbitration – in the judicial district in which each Arbitration Action has been filed. Thus, each of the 70 Arbitration Actions will require a district court to construe the identical contract language in the Cintas arbitration clauses to determine whether the defendants before that court are refusing to arbitrate within the meaning of FAA §4. Coordination or consolidation of these actions is thus necessary to prevent inconsistent interpretations of these standardized contracts. *See, e.g., In re PrimeVision Health, Inc. Contract Litig.*, 206 F. Supp. 2d 1369, 1370 (JPML 2002); *In re Shell Oil Prods. Co. Dealer Franchise Litig.*, 206 F. Supp. 2d 1373, 1374 (JPML 2002).

"aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" before §4 is invoked); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 812 F. Supp 1217 (M.D. Fla. 1993) (suit challenging arbitration forum, not arbitration itself, did not constitute refusal under §4); *Scan-Graphics, Inc. v. Photomatrix Corp.*, No. 91-4402, 1991 U.S. Dist. LEXIS 18868, *5-*7 (E.D. Pa. Dec. 31, 1991) (where party has not refused to arbitrate – in fact has agreed to proceed with arbitration in one state – but merely fails to agree with an opposing party on the choice of the arbitration venue, the opposing party is not aggrieved under §4 and cannot compel arbitration elsewhere); *Dr. Pepper Bottling Company of Texas, Inc. v. Presidential Life Ins. Co.*, No. 3-01-CV-2168-R, at *11-*12, U.S. Dist. LEXIS 4196 (N.D. Tex. Mar. 11, 2002) (where party has not failed or refused to arbitrate a party is not " aggrieved" within the meaning of §4).

Thus, Cintas' 70 federal court actions seeking to compel arbitration are all subject to the same fundamental defects, because the *Veliz* plaintiffs ***have*** agreed to arbitrate, and are actively seeking to arbitrate, in an ongoing AAA arbitration in the Northern District of California.[7] To

---

[7] Cintas engages in transparent forum shopping that undermines the very purpose of arbitration. *In Shearson Lehman Brothers, Inc. v. Brady*, 783 F. Supp. 1490 (D. Mass. 1991), the court found that a party's desire to have the "situs" of arbitration decided in court posed a potential forum shopping problem which was at odds "with quick and final resolution of the underlying dispute by arbitration." The policy behind referring matters to arbitration is to streamline litigation by reducing costs and delay. *Id.* at 1497. Further, Cintas' action undermines the very purpose of its arbitration clauses. "The inherent risks of cost and delay before arbitration could commence, should a trial court undertake to decide, subject to appeal to higher courts, disputes concerning where an application must be filed and where the arbitration must be held, are fundamentally inconsistent with the parties' agreement to resolve their disputes by arbitration." Cintas' filing of no less than 70 separate motions to compel arbitration all across the country completely undermines the letter and spirit of the arbitration clauses it seeks to invoke. Furthermore, the 70 courts across the country that Cintas appeals to are without jurisdiction to decide the terms of the "situs" clause of the arbitration agreements at issue because that responsibility lies within the sole discretion of the parties mutually selected arbitrator, the Hon. Bruce Meyerson. *Shearson*, 783 F. Supp. at 1497; *Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 4-5 (1st Cir. 2004) ("The dispute between the parties in this case over the location of the arbitration raises not a question of arbitrability but a procedural question and is therefore for the arbitrator, not the court. . . . We conclude that the District Court lacked the power to interpret the forum selection clause.").

litigate the Arbitration Actions, the *Veliz* plaintiffs will have to retain dozens of local counsel and incur substantial costs in filing identical papers in dozens of district courts. The federal court system similarly will incur substantial expense in adjudicating these identical proceedings. Unless these cases are transferred and consolidated, Petitioners will have to file 70 identical motions in 70 different cases just to address the global issue of whether Cintas is misusing these cases in a baseless effort to avoid a decision in the pending arbitration.

This issue should be decided in a uniform manner by having these 70 separate cases transferred and centralized in a single proceeding and an expedited hearing is needed to avoid the threat of inconsistent rulings. Unless Petitioners receive an expedited ruling from the Panel, however, the time for Petitioners to respond to these cases will have already occurred before the Panel rules on this issue. Without an expedited hearing, there will be exponentially higher costs and unjustified, duplicative burdens placed on Petitioners.

## IV. Expedited Resolution of Transfer and Consolidation Will Prevent Grave Prejudice to Plaintiffs

In addition to the added costs and burdens on the 70 district courts, as well as the extreme expense and other burdens on Petitioners, there is little or no way to control these divergent cases absent expedited hearing on the transfer and consolidation issue. Indeed, Petitioners' counsel has been attempting to have Cintas' counsel provide them information regarding the service of the 70 new cases, so that they can calendar response dates and thereby better act to protect the interests of the Petitioners in this MDL proceeding, in the *Veliz* Action, in the existing arbitration, and potentially in the 70 district court cases. However, Cintas' counsel has been refusing to provide Petitioners' counsel with even this most basic information regarding service of summons and related matters. *See* Ex. C hereto; Rubin Decl., ¶¶6-10.

As a result, Petitioners' counsel are presently unable to fully evaluate the situation and are prevented from knowing with certainty when individual Petitioners were served the complaint and

summons in the 70 court actions, and therefore, when responsive or other pleadings are due. Indeed, it appears that many Petitioners have already been served and that the time is running for them to respond. Thus, expedited resolution of transfer and consolidation is needed in order to gain control over this situation before default judgments or other coordination problems begin to arise in the 70 duplicative cases.

DATED: March 31, 2006

Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES

STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC 20036
Telephone: 202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
EILEEN B. GOLDSMITH
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

Attorneys for Petitioners

S:\CasesSD\Cintas\APP00029504.doc