CA 06-112S

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| In re CINTAS CORP. OVERTIME PAY ARBITRATION LITIGATION | ) ) ) | MDL No. 1781 |

**THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407**

# TABLE OF CONTENTS


Page

I. Introduction ........................................ 1

II. The MDL Panel Has Jurisdiction to Transfer and Consolidate the Cintas' Petition Actions ........................................ 2

A. Cintas' Challenge to this Panel's Jurisdiction Is Unavailing ........................................ 2

B. Nothing in the FAA Suggests That Petition's to Compel Arbitration Are Not Civil Actions Under the Panel's Jurisdiction ........................................ 3

C. Nothing In the FAA's Legislative History Suggests §4 Petition Cases Are Beyond the Panel's Jurisdiction ........................................ 5

D. Cintas' Misreading of the Federal Rules of Civil Procedure Cannot Support Its Characterization of the Petition Cases as Something Other than "Civil Actions" ........................................ 6

III. Actions Under FAA §4 May Require Pretrial Proceedings That Are Appropriately Coordinated or Consolidated ........................................ 8

IV. Consolidation and Transfer Allows for Uniform Resolution of Common Factual Issues which Are already at Issue in the California Arbitration/Litigation ........................................ 9

V. Conclusion ........................................ 13

# TABLE OF AUTHORITIES

Page

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ....... 6

*Deiulemar Compagnia di Navigazione S.P.A. M/V Allegra*,
198 F.3d 473 (4th Cir. 1999) ....... 4, 8

*Famous Realty, Inc. v. Flota Mercante Grancolombiana, S.A.*,
81 F. Supp. 553 (E.D.N.Y. 1948) ....... 4

*Gillson v. Vendome Petroleum Corp.*,
35 F. Supp. 815 (E.D. La. 1940) ....... 2

*Green Tree Financial Corp. v. Bazzle*,
539 U.S. 444 (2003) ....... 10

*In re Koratron*,
302 F. Supp. 239 (J.P.M.L. 1969) ....... 2

*In re Merriam*,
250 B.R. 724 (D. Colo. 2000) ....... 7

*In re NOS Communs. Billing Practices Litig. v. Nos Communs.*,
No. 1357, 2000 U.S. Dist. LEXIS 14840 (J.P.M.L. Oct. 6, 2000) ....... 2

*Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Katherine S. King*,
812 F. Supp. 1217 (M.D. Fla. 1993) ....... 9

*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*,
963 F.2d 639 (9th Cir. 1988) ....... 9

*Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa*,
199 F. Supp. 716 (S.D.N.Y. 1961) ....... 8

*Richard C. Young & Co. v. Leventhal*,
389 F. 3d 1 (1st Cir. 2004) ....... 10

*Shearson Lehman Brothers, Inc. v. Brady*,
783 F. Supp. 1490 (D. Mass. 1991) ....... 10

*United States v. Locke*,
471 U.S. 84 (1985) ....... 5

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 2 .......... 2
Rule 81(a)(3) .......... 4, 7

28 U.S.C.
§1407 .......... 10
§1407(a) .......... 1, 2, 3, 13
§1441 .......... 2

42 U.S.C.
§11603(b) .......... 8

9 U.S.C.
§4 .......... *passim*

## I. Introduction

Cintas makes two main points in opposing the transfer of its 70 nearly identical Petitions to Compel Arbitration under §4 of the Federal Arbitration Act, 9 U.S.C. §4. First, it contends that the Judicial Panel on Multidistrict Litigation has no "jurisdiction" to consider consolidation and transfer of those cases, because 28 U.S.C. §1407(a) refers only to "civil actions" and Cintas has instead filed a series of "petitions." This argument fails many times over. The term "civil action" is commonly and broadly used throughout the Federal Rules of Civil Procedure and Title 28 to encompass all manner of civil actions, whether initiated by complaint, petition, or otherwise. While there may have been a difference historically between equitable actions (commonly initiated by petitions) and legal actions (commonly initiated by complaint), that distinction no longer exists and there is no legislative history, legislative policy, or other logical or common sense rationale for attributing to Congress an intent to deprive the JPML of jurisdiction to consider civil actions initiated by "petition" rather than "complaint."

Second, Cintas makes a somewhat related argument that consolidation and transfer would be inappropriate in the context of a FAA §4 petition to compel arbitration because those proceedings do not anticipate the type of pretrial proceeding that the MDL process is designed to streamline. Cintas is wrong. While FAA §4 anticipates expedited proceedings, district courts commonly entertain motions to dismiss under FAA §4 (where, as here, there has been no "failure or refusal" to arbitrate), as well as motions to compel discovery or for entry of protective orders to block or limit discovery, and other pre-trial motions. Each of these matters is amenable to consolidate and transfer under 28 U.S.C. §1407(a), and on the facts of this case, involving 70 nearly identical district court actions raising the same issues, under the same agreements, subject to the same defenses, tremendous savings of judicial and party resources will result from consolidation and transfer to the Northern District of California.

## II. The MDL Panel Has Jurisdiction to Transfer and Consolidate the Cintas' Petition Actions

### A. Cintas' Challenge to this Panel's Jurisdiction Is Unavailing

The Panel's jurisdiction derives from 28 U.S.C. §1407(a), which provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.

Through a tangle of stilted readings and out-of-focus assertions, Cintas argues the 70 petition cases here are not "civil actions" within the meaning of §1407(a) and therefore are beyond the Panel's power to transfer or consolidate. Cintas' cites no case authority for that novel proposition, however, and neither the statutory language nor the legislative policies permit such a narrow reading of the commonly used term "civil actions."

Section 1407 does not preclude jurisdiction over FAA §4 actions, although Congress surely could have carved out an exception for that category of civil action as it did with certain categories of antitrust cases. *See* §1407(g). *See, e.g., In re NOS Communs. Billing Practices Litig. v. Nos Communs.*, No. 1357, 2000 U.S. Dist. LEXIS 14840 (J.P.M.L. Oct. 6, 2000); *In re Koratron*, 302 F. Supp. 239 (J.P.M.L. 1969). Cintas styles the 70 petition cases as "proceedings," which, in its view, are materially distinct from "civil actions." But Cintas offers no reason why Congress would have drawn such a distinction and overlooks the wholly synonymous use of "actions" and "proceedings" permeating our laws.[1] Indeed, §1407 itself uses the words "civil actions" and "proceedings"

---

[1] The term "civil action" is intended to have a generic and broad reach to embrace a spectrum of judicial proceedings. *See* Fed. R. Civ. P. 2 ("There shall be one form of action to be known as a 'civil action.'"); Revision Notes to 28 U.S.C. §1441 (words such as "case', 'cause', 'suit', and the like have been omitted and the words 'civil action' substituted in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure"). "Generally speaking, and unless its meaning be specifically restricted, an 'action' refers to any legal proceeding in a court of justice having for its purpose the enforcement of a right or the redress of a wrong." 1 C.J.S. Actions §1, at p. 938; *see also Gillson v. Vendome Petroleum Corp.*, 35 F. Supp. 815, 819 (E.D. La. 1940) ("'civil action' embraces from its

interchangeably. After identifying "civil actions" as the matters potentially subject to transfer, §1407(a) continues:

> Such transfer shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for ***such proceedings*** will be for the convenience of the parties and the witnesses and will promote the just and efficient conduct of such actions.

(Emphasis added.)

**B. Nothing in the FAA Suggests That Petition's to Compel Arbitration Are Not Civil Actions Under the Panel's Jurisdiction**

Cintas' attempt to characterize a petition to compel arbitration as beyond the Panel's jurisdictional reach finds no greater support in the FAA, its legislative history and the Federal Rules of Civil Procedure.

Cintas asserts that the "text and structure" of the FAA evidences that the 70 cases at issue here are not "civil actions." Cintas' MDL Opp. at 9. There is no FAA "text" that bars transfer and consolidation under §1407. Nor is there anything about the nature of FAA §4 that would make civil actions to compel not amenable to multidistrict Panel jurisdiction.

FAA §4 provides that there must first be a hearing to determine "the making of the agreement for arbitration or the failure to comply therewith is not in issue." If the court so finds, it is required to direct the parties to proceed with arbitration. If, however, the making of the arbitration agreement or a party's "failure, neglect, or refusal to perform" remains an issue, the case proceeds "summarily" to a bench or a jury trial conducted under the Federal Rules of Civil Procedure. §4.

Cintas argues that FAA §4 petitions neither look nor feel like a typical "civil action." Cintas essentially contends §1407 requires a strict, point-by-point match between some purported "civil action" prototype and the cases proffered for transfer. It does not. By its terms, §1407 applies to all

---

natural import, every species of 'suit' not of a criminal kind, and comprehends every conceivable cause of action, whether legal or equitable . . . .").

civil actions. And the distinctions between the 70 cases here and Cintas' purported "hallmarks" of a "civil action" do not persuade that the petition actions cannot be before the Panel.

Cintas first points to §4's requirement that a petition, not a complaint, be filed to commence the action. However, "petition" and "complaint" are just two different terms for the same concept that have different historical roots but common contemporary usage. The term "petition" is drawn from equity jurisdiction:

> Formerly, in equity practice, the original pleading was denominated a petition or bill. Today, in almost all jurisdictions, whether in law or equity, the initial pleading is a complaint.

*Blacks Law Dictionary* 793 (6th Ed. 1991). Even so, it is now well established that "civil action" can be commenced by the filing of a petition, as is the case, for example, in bankruptcy actions. And an order under FAA §4 ultimately compelling arbitration is in the nature of equitable relief. Finally, that §4 procedures can be summary in nature does not negate their civil-action nature. *See, e.g., Famous Realty, Inc. v. Flota Mercante Grancolombiana, S.A.*, 81 F. Supp. 553, 555 (E.D.N.Y. 1948) (finding a summary proceeding to recover the possession of realty from a tenant was a "civil action" within the Federal Rules of Civil Procedure: "It is idle to argue, as the plaintiff does, that because of the summary nature of the relief sought the proceeding is not an action.").

Under FAA §4, the trial court must conduct a pretrial hearing to determine fact issues bearing on the arbitration agreement's making and a party's compliance with it. To the extent discovery is needed on those issues, it is available. *See, e.g., Deiulemar Compagnia di Navigazione S.P.A. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999). If fact questions remain after the pretrial hearing, they are resolved through a bench or jury trial. Other procedures of the Federal Rules are also available. *See* Fed. R. Civ. P. 81(a)(3). Thus, a §4 proceeding anticipates the availability of a pretrial test of the petitioner's allegations, permits discovery to advance that challenge, and affords a trial on the merits if fact issues remain.

Cintas selectively reads what it identifies as the "jurisdictional language" of §4 to assert that the 70 petition cases cannot be "civil actions." Read fully – and fairly – §4 simply does not do that. Under §4, an aggrieved party to an arbitration agreement may petition "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." This passage says nothing about the ***nature*** of cases filed under §4. It instead directs the petitioner to the proper court in which to file his or her action. The 70 petition actions here, for example, would not have been properly filed in bankruptcy courts, as those courts do not have subject matter jurisdiction over unpaid overtime claims under the Federal Labor Standards Act. It simply does not follow, as Cintas insists, that the above-quoted language of §4 would be mere "surplusage" if a case filed under §4 were a "civil action." Cintas MDL Opp. at 11. That §4 directs the initial pleading's filing in a court that would have subject matter jurisdiction over the dispute does not negate that a petition seeking to compel arbitration initiates a ***new*** "civil action."

In sum, neither the language of nor the procedural structure created by §4 point to the 70 petition cases as being something other than "civil actions."

### C. Nothing In the FAA's Legislative History Suggests §4 Petition Cases Are Beyond the Panel's Jurisdiction

As with §4 itself, there is nothing in the FAA's legislative history that requires that petitions to compel arbitration be treated as something different from "civil actions." Cintas points to snippets from the House and Senate Reports that simply highlight §4's procedures. Cintas MDL Opp. at 12. These passages offer no support for Cintas' argument and are poor substitutes for the congressional intent manifest in §4's express language. *See United States v. Locke*, 471 U.S. 84, 95-96 (1985) ("'[T]he legislative purpose is expressed by the ordinary meaning of the words used. Going behind the plain language of a statute in search of a possibly contrary congressional intent is a "step to be taken cautiously" even under the best of circumstances.'") (citation omitted).

The bulk of Cintas' historical citation comes from a position paper offered, not by a legislator, but a proponent of the FAA's enactment. As such, it is advocacy and not an indication of congressional intent. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) ("Legislative history is problematic even when the attempt is to draw inferences from the intent of duly appointed committees of Congress. It becomes far more so when we consult sources still more steps removed the full Congress and speculate upon the significance of the fact that a certain interest group sponsored or proposed particular legislation. . . . We ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal – even assuming the precise intent of the group can be determined.").

What Cintas omitted from its romp through Congressional documents is the most salient reference to the jurisdictional question here. The House Report notes that although the FAA procedures are designed to eliminate expense and delay, they also safeguard the rights of the affected parties. Thus,

> [t]o secure jurisdiction for arbitration, however, service of process must be made personally, so that there is not danger that defendant, having an honest defense, will be called up to defend his case at a distance under a disadvantage. ***The proceeding will be commenced practically as any action is now commenced in the Federal courts.***

H.R. Rep. No. 68-96, at 2 (emphasis added).

As the structure of §4 highlights and as the congressional intent makes manifest, there is no practical difference between a proceeding under §4 and the commencement of "any action" in the federal courts.

### D. Cintas' Misreading of the Federal Rules of Civil Procedure Cannot Support Its Characterization of the Petition Cases as Something Other than "Civil Actions"

The Federal Rules of Civil Procedure were enacted to unify the rules of law and equity "so as to secure one form of civil action and procedure for both." Advisory Committee Note, No. 3 to Rule 1. Accordingly, the Federal Rules govern "in all suits of a civil nature whether cognizable as cases

at law or in equity . . . with the exceptions stated in Rule 81." Rule 81(a)(3) applies the rules to "proceedings under Title 9, U.S.C. relating to arbitration . . . to the extent that matters of procedure are not provided for in those statutes."

Rule 81(a)(3), on its face, neither implicates nor contravenes this Panel's jurisdiction or ability to transfer and consolidate "proceedings relating to arbitration." Cintas asserts that Rule 81 characterizes matters arising under the FAA as "proceedings" that are different from "civil actions" over which the Panel has jurisdiction. Cintas points to no authority, legislative history or comment that supports its narrow reading. Cintas' semantic ploy is best unraveled by resorting to a dictionary.

> Proceeding "may be used synonymously with 'action' or 'suit' to describe the entire course of an action at law or suit in equity from the issuance of the writ or the filing of the complaints until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party." Blacks Law Dictionary 1083 (5th ed.).

Rule 81(a)(3) simply has no bearing on defining litigation under §4 as not being a "civil action." The term, "Proceedings" can – and should be – understood in its common usage to embrace a course of judicial conduct that includes an entire civil action.

Cintas next urges that because a petition, rather than a "complaint," initiated the 70 cases at issue no "civil action" has been commenced, because under Rule 3, only a complaint can commence a civil action. The definitional dilemma Cintas hopes to create is not grounded on logic or the law, but on its own wishful thinking. The rigid distinction Cintas urges between a petition and a complaint is the very distinction the Federal Rules sought to abolish. Petitions and complaints are both initial pleadings that commence various actions. The action to compel arbitration here is, in essence, a suit in equity to compel specific performance of a contract. It is not surprising that with §4's enactment in 1947, the initial pleading, given its equitable roots, was denominated a petition. That petitions commence other types of civil actions further undermines Cintas' argument. *See, e.g., In re Merriam*, 250 B.R. 724, 733 (D. Colo. 2000) ("Analogous to a complaint, the debtor's petition

initiates a bankruptcy case."); 42 U.S.C. §11603(b) ("any person seeking to ***initiate judicial proceedings*** under the Convention for the return of a child . . . ***may do so by commencing a civil action by filing a petition*** for the relief sought in any court which has jurisdiction over such action. . . .").

Cintas' contrived – an unprecedented – reading of the Federal Rules of Civil Procedure does not remove §4 proceedings from this Panel's jurisdictional reach.

## III. Actions Under FAA §4 May Require Pretrial Proceedings That Are Appropriately Coordinated or Consolidated

Cintas headlines that §4 actions "Do Not Have Pretrial Proceedings Capable Of Coordination Or Consolidation By The Panel." Cintas MDL Opp. at 15. One would think that so bold an assertion would be supported by unequivocal, compelling and established authority. But it is not. Indeed, the FAA, the Federal Rules of Civil Procedure and established case law all point to the unavoidable conclusion that §4 cases ***do*** often require pretrial proceedings that are amenable to transfer and consolidation under this Panel's jurisdiction.

As discussed previously, §4 mandates pretrial proceedings to determine whether a valid arbitration agreement exists or whether a party is complying with the agreement. This is a necessary threshold determination to a bench or jury trial. Pretrial discovery to advance this pretrial determination may be commonly ordered. *See Deiulemar*, 198 F.3d at 482 (Rule 81 authorizes " a district court, in enforcing an arbitration agreement, to 'order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement.'") (citation omitted); *Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa*, 199 F. Supp. 716, 718 (S.D.N.Y. 1961) (discovery procedures may apply to Title 9 proceedings "e.g., on the issue of whether there was an agreement to arbitrate which the Court must decide under §4 before directing the parties to proceed to arbitration."). Indeed, proceedings and relief permitted under the Federal Rules of Civil Procedure, and not expressly by the FAA, are unquestionably available to parties pending arbitration. For

example, "[t]he fact that a dispute is arbitrable and the court so orders under [Section 4] does not strip it of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met." *PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 963 F.2d 639, 642 (9th Cir. 1988).

Here, the 70 identical petition actions all present, at a minimum, the same threshold question of whether the respondents have failed, neglected or refused to perform under the arbitration agreements. This squarely presents a pretrial question that must be addressed under §4 and is best addressed once. Courts have entertained such pretrial determinations through various means. *See, e.g., Merrill Lunch, Pierce, Fenner & Smith, Inc. v. Katherine S. King*, 812 F. Supp. 1217 (M.D. Fla. 1993) (FAA §4 claim to compel arbitration rejected on motion to dismiss and, alternatively, on summary judgment because there was no refusal to arbitrate.).

As discussed in the following section, the uniform, common pretrial issues presented in the 70 cases provide a compelling basis for the Panel to transfer and consolidate the petition actions.

## IV. Consolidation and Transfer Allows for Uniform Resolution of Common Factual Issues which Are already at Issue in the California Arbitration/Litigation

Cintas argues that its 70 cases "do not involve any common issues of fact" so as to warrant consolidation and transfer. Cintas' MDL Opp at 8. Cintas' assertion that the 70 arbitration cases do not present common factual and legal questions is absurd. Several times in its opposition to consolidation, Cintas expressly admitted that the petitions it filed in the 70 cases are "identical." *See, e.g.*, Cintas MDL Opp. at 2 ("ultimate outcome on each of the 70 Petition proceedings will . . . be the same"). Cintas asserts that each of the respondents in each of those cases is violating his or her agreement to arbitrate in precisely the same manner. Cintas does not claim that the outcome of any of the arbitration cases hinges on any facts peculiar to any individual respondent. Nothing

further is necessary to establish that the cases before the JPML panel present "common questions of fact" warranting consolidation. 28 U.S.C. §1407.

It is difficult to imagine a stronger case for consolidation. Cintas asserts that some 1,900 individuals have breached their contracts with Cintas in precisely the same way. Consolidation is critical to prevent 70 courts from reaching inconsistent conclusions on the meaning and import of those facts, and the interpretation of Cintas' arbitration agreements with respect to those facts. Indeed, respondents will contend in a pretrial motion to dismiss that will apply with equal force to every one of Cintas' cases, that the district courts in which Cintas filed lack jurisdiction over those cases because respondents have ***not*** refused or failed to arbitrate within the meaning of FAA §4. What Cintas is really trying to do is to block Judge Meyerson from deciding in the pending arbitration which Cintas workers are properly before him, but §4 is not available for that purpose. *See Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003) (whether an arbitration agreement forbids class arbitration is a contract construction issue for the arbitrator to decide); *Shearson Lehman Brothers, Inc. v. Brady*, 783 F. Supp. 1490, 1497 (D. Mass. 1991) (finding party's desire to have "situs" of arbitration decided in court posed a potential forum shopping problem which was at odds "with quick and final resolution of the underlying dispute by arbitration"); *Richard C. Young & Co. v. Leventhal*, 389 F. 3d 1, 4-5 (1st Cir. 2004) ("The dispute between the parties in this case over the location of the arbitration raises not a question arbitrability but a procedural question and is therefore for the arbitrator, not the court. . . . We conclude that the District Court lacked the power to interpret the forum selection clause.").

Cintas argues that pretrial proceedings will not be required in these 70 actions because Judge Armstrong has already ruled that all 1,900 respondents' arbitration agreements are enforceable and require arbitration in the county where the individual respondent last worked for Cintas. *See* Cintas Opposition Br. at 3-6. In fact, Judge Armstrong ruled nothing of the kind, for reasons that

respondents have already briefed at length to the arbitrator, as has Cintas. More importantly, the jurisdictional issue under §1407(a) has nothing to do with which party will prevail on any particular pretrial motion, but instead rests on whether Congress intended to permit the JPML to assert jurisdiction over all civil actions in which such pretrial proceedings may be required.

Cintas' argument that it will prevail on respondents' anticipated motions to dismiss effectively concedes that, procedurally, respondents have the right to file such motions to dismiss. And, if the merits of the upcoming motions to dismiss ultimately depend on what Judge Armstrong previously ruled in the Veliz case, surely it makes more sense to consolidate these actions and transfer them to Judge Armstrong for all pretrial matters, rather than have 70 different district court judges in 70 different cases attempt to determine what Judge Armstrong did or did not intend in her orders in the *Veliz* action.

Moreover, this very same contract interpretation issue regarding whether the arbitration agreements allow for one collective and class-wide arbitration in California is already set for decision in the arbitration proceedings that have been pending since 2004. While Cintas' Answer to claimants arbitration demand objected to going forward as a collective or classwide arbitration, it did so based on its reading of the relevant contractual provisions of the arbitration agreements. According to Cintas' Answer in arbitration, permitting such a collective or class action would "violate the express terms of each of the separate arbitration agreements between Cintas and each of the Claimants as well as violate the express terms of each of the separate arbitration agreements between Cintas and each of the members of the putative class and putative subclasses." Ex. 1 to the Declaration of Steven W. Pepich in Support of the Veliz Plaintiffs' Reply Memorandum in Support of Their Motion to Transfer and Consolidate Actions Under 28 U.S.C. §1407 ("Pepich Decl.,") at 2. (Cintas Answer to Arbitration Demand). Thus, Cintas' Answer recognized and put at issue this arbitration clause construction issue and whether the contract language would allow a global

arbitration involving all claimants – the very issue Cintas wants 70 federal district courts to litigate again and again in its 70 redundant actions.

Cintas similarly agree to have the arbitration clause construction issue briefed and resolved in the California arbitration. On July 9, 2004, following a conference call with counsel for the parties, AAA Case Manager Karen Fontaine sent a letter to counsel for the parties, describing the four phases of arbitration followed under the AAA's Class Action Rules. According to the letter, the first phase of the arbitration is the Clause Construction Phase, when "the arbitrator will decide whether the parties' contract/arbitration clause allows for class actions." The letter explained that "[i]f the arbitrator determines that the clause does not allow class actions, this matter will be closed and Claimants will be required to file individual cases for each of the class participants." Claimants requested that the arbitration be held in San Francisco, California, and Cintas indicated that it had no objection to that locale for the Clause Construction Phase. Pepich Decl., Ex. 2.

Consistent with these pleadings, procedures and statements by Cintas in the California arbitration, plaintiffs filed their clause construction brief on February 9, 2006, seeking a determination by the arbitrator that the arbitration agreements permit class-wide and collective actions. *See* Pepich Decl., Ex. 3. After petitioners' clause construction brief had been filed in the California arbitration, and the issues were headed for decision in that forum, Cintas requested additional time to brief the clause construction issue, stating that it was too busy to file any opposition briefing before April 7, 2006. *See* Ex. 1 to *Veliz* Plaintiffs Emergency Request to Expedite Resolution of Transfer Motion Under 28 U.S.C. §1407. Cintas then used this extension of time to file the 70 cases at issue in this MDL petition. On or about March 20, 2006, Cintas filed 70 petitions in 70 district courts in 37 states seeking to preempt a decision in this arbitration on this clause construction issue. In its 70 cases Cintas seeks to compel the 1900 plaintiffs from the *Veliz* action to arbitrate in 70 local jurisdictions, but these are the very same parties who are seeking a

clause construction ruling in the California arbitration that will, if they are successful, allow them to continue to pursue their claims in that California arbitration/litigation.

Thus, Cintas' 70 cases seek to circumvent a decision by the arbitrator on the very issue that is set for decision in the existing arbitration proceeding and which will be subject to appeal to Judge Armstrong under AAA rules. There is simply no reason for this issue to be repeatedly addressed, considered and resolved by 70 different federal district court judges in 70 different jurisdictions, when the matter has been long-pending in the California arbitration/litigation. This is precisely the type of common factual situation where the MDL panel routinely centralizes duplicative actions to facilitate the just and efficient course of litigation, to prevent inconsistent rulings, the waste of resources and the inconvenience of the parties. As this panel has done many times in similar FLSA actions, the panel should exercise its jurisdiction to centralize these proceedings.

## V. Conclusion

For all the reasons set forth above, the JPML is fully justified in exercising jurisdiction under §1407(a) to permit the transfer and consolidation of the pretrial matters on the petition actions before it, and there are compelling reasons for why the Panel should issue such a ruling.

DATED: May 3, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
LAWRENCE A. ABEL
HELEN I. ZELDES

STEVEN W. PEPICH

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC 20036
Telephone: 202/822-6762
202/828-8528 (fax)

ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
VANESSA H. EISEMANN
JOCELYN S. SPERLING
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

Attorneys for Plaintiff

S:\CasesSD\Cintas\MDL\BRF0030620.doc

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2. That on May 3, 2006, declarant served the THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3. Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of May, 2006, at San Diego, California.

Bonnie M. Naiditch

BONNIE M. NAIDITCH