# EXHIBIT 3

Michael Rubin (S.B. No. 80618)
Scott A. Kronland (S.B. No. 171693)
Eileen B. Goldsmith (S.B. No. 218029)
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151 - Office
(415) 362-8064 - Fax

Theresa M. Traber (S.B. No. 116305)
Vanessa Eisemann (S.B. No. 210478)
Jocelyn Sperling (S.B. No. 211714)
TRABER & VOORHEES
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
(626) 585-9611 - Office
(626) 577-7079 - Fax

Theodor J. Pintar (S.B. No. 131372)
Steven W. Pepich (S.B. No. 116086)
James A. Caputo (S.B. No. 120485)
Lawrence A. Abel (S.B. No. 129596)
Helen I. Zeldes (S.B. No. 220051)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 231-1058 - Office
(619) 231-7423 - Fax

(Additional counsel on following page)

Attorneys for Claimants PAUL VELIZ, *et al.*

**ARBITRATION PROCEEDING BEFORE**
**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| PAUL VELIZ et al.,<br><br>Claimants,<br><br>vs.<br><br>CINTAS CORPORATION et al.,<br><br>Respondents. | Case No. 11 160 01323 04<br><br>**CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF**<br><br>Arbitrator: Hon. Bruce Meyerson (Ret.)<br>Case Manager: Kelly L.S. Taylor, Esq.<br><br>Date and time: TBD |

**Exhibit 3**

Albert H. Meyerhoff, Esq. (S.B. No. 54134)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
355 South Grand Avenue, Suite 4170
Los Angeles, California 90071
(213) 617-9007 - Office
(213) 617-9185 - Fax

Nancy Juda, Esq.
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, D.C. 20036
(202) 822-2024- Office
(202) 828-8528- Fax

Attorneys for Claimants PAUL VELIZ, *et al.*

# TABLE OF CONTENTS

Introduction . . . . . 1

Background . . . . . 4

Cintas' Arbitration Clauses . . . . . 6

Argument . . . . . 10

Cintas' Arbitration Clause Does Not Forbid Claimants from Proceeding with a Class or Collective Arbitration. . . . . . 10

Conclusion . . . . . 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Mt. Clemens Pottery Co.*, 149 F.2d 461 (6th Cir. 1945), *rev'd on other grounds*, 328 U.S. 680, 680 (1946) . . . . . 19

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) . . . . . 1, 11

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001) . . . . . 13

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989) . . . . . 16, 18

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.* 282 F. Supp. 2d 1131 (N.D. Cal. 2003) . . . . . 6

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) . . . . . 16, 19, 21

*Lozada v. Dale Baker Oldsmobile*, 91 F. Supp. 2d 1087 (W.D. Mich. 2000) . . . . . 21

*Luna v. Household Finance Corp.*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002) . . . . . 21

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) . . . . . 15, 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) . . . . . 14

*Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir. 1997) . . . . . 19

*Richard C. Young & Co. v. Leventhal*, 298 F. Supp. 2d 160 (D. Mass. 2003) . . . . . 14

*Walker v. Ryan's Family Steak Houses Inc.*, 289 F. Supp. 2d 916 (M.D. Tenn. 2003), *aff'd*, 400 F.3d 370 (6th Cir. 2005) . . . . . 16

### FEDERAL RULES AND STATUTES

9 U.S.C. §4 . . . . . *passim*

29 U.S.C. §216(b) . . . . . *passim*

Fed. R. Civ. P. 19 . . . . . 13, 14, 15

Fed. R. Civ. P. 20 . . . . . . . . . . 13, 14, 15

**STATE CASES**

*Allstate Insurance Co. v. Avis Rent-a-Car System, Inc.*,
947 P.2d 341 (Colo. 1997) . . . . . . . . . . 20

*BMW of N. America v. Krathen*,
471 So. 2d 585 (Fla. App. 1985) . . . . . . . . . . 12

*Badie v. Bank of America*,
67 Cal. App. 4th 779 (1998) . . . . . . . . . . 20

*BellSouth Communications System, LLC v. West*,
902 So. 2d 653 (Ala. 2004) . . . . . . . . . . 20

*BellSouth Mobility LLC v. Christopher*,
819 So. 2d 171 (Fla. App. 2002) . . . . . . . . . . 21

*Bell v. Farmers Insurance Exch.*,
115 Cal. App. 4th 715 (2004) . . . . . . . . . . 19

*Benjamin Moore Paint Co. v. Aetna Casualty & Surety Co.*,
843 A.2d 1094 (N.J. 2004 ) . . . . . . . . . . 20

*Brauer v. Trustees of First M.E. Church*,
1 A.2d 409 (N.J. Err. & App. 1938) . . . . . . . . . . 12

*Cantonbury Heights Condominium Association, Inc. v. Local Land Development, LLC*,
873 A.2d 898 (Conn. 2005) . . . . . . . . . . 20

*City of Homestead v. Johnson*,
760 So. 2d 80 (Fla. 2000) . . . . . . . . . . 20

*Computer Associates v. U.S. Balloon Manufacturing Co.*,
782 N.Y.S.2d 117 (App. Div. 2004) . . . . . . . . . . 20

*Cress v. Recreation Services*,
795 N.E.2d 817 (Ill. App. 2003) . . . . . . . . . . 12

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) . . . . . . . . . . 21

*Dowd & Dowd, Ltd. v. Gleason*,
693 N.E.2d 358 (Ill. 1998) . . . . . . . . . . 20

*Eagle v. Fred Martin Motor Co.*,
809 N.E.2d 1161 (Ohio App. 2004) . . . . . . . . . . 21

*Keating v. Superior Court*,
31 Cal. 3d 584 (1982) . . . . . . . . . . 19

*Kinkel v. Cingular Wireless, LLC*,
828 N.E.2d 812 (Ill. App. 2005) . . . . . . . . . . 21

*Klapp v. United Insurance Group Agency, Inc.*,
663 N.W.2d 447 (Mich. 2003) . . . . . 20

*Klussman v. Cross Country Bank*,
134 Cal. App. 4th 1283 (2005) . . . . . 17

*Leonard v. Terminix International Co.*,
854 So. 2d 529 (Ala. 2002) . . . . . 21

*MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc.*,
802 N.E.2d 901 (Ind. 2004) . . . . . 20

*Porter v. Columbus Board of Industrial Rel'ns*,
675 N.E.2d 1329 (Ohio App. 1996) . . . . . 12

*Ratcliff Architects v. Vanir Construction Management*,
88 Cal. App. 4th 595 (2001) . . . . . 12

*Ringle v. Bruton*,
86 P.3d 1032 (Nev. 2004) . . . . . 20

*Sav-On Drug Stores, Inc. v. Superior Court*,
34 Cal. 4th 319 (2004) . . . . . 16

*Southern Bell Telephone & Telegraph Co. v. Chappelle*,
415 S.W.2d 826 (Ky. 1967) . . . . . 20

*Southern Cal. Gas Co. v. Ventura Co.*,
150 Cal. App. 2d 253 (1957) . . . . . 11

*State v. Philip Morris USA Inc.*,
618 S.E.2d 219 (N.C. 2005) . . . . . 20

*Tillman v. Commercial Credit Loans*,
2005 WL 2295111 (N.C. Super. 2005) . . . . . 21

*Trimble v. Pracna*,
176 S.W.3d 706 (Mo. 2005) . . . . . 20

*Truck Insurance Exch. v. Marks Rentals, Inc.*,
418 A.2d 1187 (Md. 1980) . . . . . 20

*Westfield Insurance Co. v. Galatis*,
797 N.E.2d 1256 (Ohio 2003) . . . . . 20

*Whitney v. Alltel Communications, Inc.*,
173 S.W.3d 300 (Mo. App. 2005) . . . . . 21

**STATE STATUTES AND COURT RULES**

Ky. R. Civ. P. 23 . . . . . 16

N.M. R. Civ. P. 1-023 . . . . . 16

Wash. Sup. Ct. Civ. R. 23 . . . . . . . . 16
Cal. Code Civ. Proc. §382 . . . . . . . . 16
Colo. R. Civ. P. 23 . . . . . . . . 16
Conn. Practice Book §9-7 *et seq* . . . . . . . . 16
Ill. Comp. Stat. 5/2-801 . . . . . . . . 16
Kan. Stats. §60-223 . . . . . . . . 16
Mass. R. Civ. P. 23 . . . . . . . . 16
Md. R. Civ. P. 2-231 . . . . . . . . 16
Mo. Rules of Ct. 52.08 . . . . . . . . 16
N.J. Ct. Rules 4:32-1 *et seq* . . . . . . . . 16
N.Y. CPLR §901 *et seq* . . . . . . . . 16
Ohio R. Civ. P. 23 . . . . . . . . 16
Pa. R. Civ. P. 1701 *et seq* . . . . . . . . 16
Wis. Stat. §803.08 . . . . . . . . 16

**OTHER**

Restatement (Second) of Contracts, §206, cmt. a . . . . . . . . 18
Restatement (Second) of Contracts, §211, cmt. f . . . . . . . . 17

## INTRODUCTION

Claimants Paul Veliz *et al.* seek a "clause construction" determination under Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Class Arbitration Rules").[1] Because the arbitration clauses drafted by respondent Cintas do not include *any* language explicitly forbidding (or even referring to) class or collective arbitration, and because those clauses authorize the Arbitrator to "apply . . . relevant federal and state laws" and "to award . . . any relief . . . available under relevant laws," the Arbitrator should issue a partial final award under Rule 3 holding that Cintas' arbitration clauses permit claimants to proceed on a class and collective basis. *See* Declaration of Eileen Goldsmith, Exh. 13, *Sidhu and GMRI, Inc.*, AAA Case No. 11 160 02273 04 (Meyerson 2005) ("*Sidhu*") (clause construction award based on similar facts). In the parallel federal court action, Cintas has conceded that "it does not claim that any language in the arbitration agreements necessarily precludes all class arbitration." *See* Goldsmith Decl., Exh. 24, Cintas' Opp. to Pls. Mot. for Reconsideration (Dec. 14, 2005), *Veliz et. al. v. Cintas Corp.*, No. 03-1180 SBA ("Reconsideration Opp.") at 17. This concession is surely correct given the language and history of the applicable arbitration clauses, as discussed below.

Claimants in this arbitration are delivery drivers, often known as Service Sales Representatives ("SSRs"), employed by respondent Cintas Corporation, a national uniform and laundry service company. Claimants allege that they routinely worked long hours, sometimes more than 60 or 70 hours per week, yet Cintas failed to pay them overtime compensation as required by the federal Fair Labor Standards Act ("FLSA") and various state overtime laws.

---

[1] Class Arbitration Rule 3 states that the question to be decided at the Clause Construction phase is "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." A more appropriately-worded question, as framed by the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ("*Bazzle*"), is whether Cintas' arbitration clauses "forbid class arbitration" – which more clearly expresses that the burden of proof lies with the employer which challenges claimants' statutory right to proceed on a representative basis. *See id.* at 448-52. That difference in phrasing should not matter, however, unless Cintas disputes that it has the burden of proving that claimants knowingly agreed to waive their right to proceed on a representative basis by executing the Cintas arbitration agreements.

Claimants, who bring this arbitration on their own behalf and on behalf of all similarly-situated Cintas drivers, seek certification of this arbitration as both a collective action under Section 16(b) of the FLSA, 29 U.S.C. §216(b), and as a series of related state law class actions under the overtime laws of California, Colorado, Connecticut, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, Washington, and Wisconsin. *See* Demand for Arbitration (May 4, 2004); Amendment to Demand (July 8, 2004); Second Amendment to Arb. Demand (Sept. 30, 2005).[2]

The parties disagree about how many of the 1,800 individual claimants identified in claimants' Arbitration Demand and amendments thereto, are proper parties to the present arbitration. Claimants contend that all of those individuals are entitled to proceed, while Cintas contends that only those claimants whom Judge Saundra Brown Armstrong explicitly compelled to arbitrate in the Northern District of California pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, may proceed. However, given Cintas' concession that *at least* those 55 claimants are properly before the Arbitrator, that dispute is immaterial to the clause

---

[2] Although this arbitration also includes claimants from Alabama, Delaware, Florida, Idaho, Iowa, Mississippi, Nebraska, Nevada, North Carolina, Oklahoma, South Carolina, Utah, and Virginia, those states do not have applicable overtime laws, and the claimants from those states therefore seek relief under the FLSA only. After Judge Armstrong in the federal action enters her written order based on the October 18 and October 27, 2005 hearings, *see infra* n.3, claimants will amend the arbitration demand to submit the overtime claims of plaintiffs who worked for Cintas in Arizona, Louisiana, and Pennsylvania, assuming the Court upholds the enforceability of those plaintiffs' arbitration agreements.

Claimants are asserting Michigan state law claims in their arbitration even though Judge Armstrong ruled on the federal action that no such claims can be asserted under Michigan law. Claimants appealed that reading of the Michigan Minimum Wage Law, and the Ninth Circuit recently certified that unsettled state law issue to the Michigan Supreme Court, where it remains pending. Goldsmith Decl., Exh. 25.

construction issue, since the present motion may properly be brought by *at least* those claimants who were compelled to arbitrate pursuant to FAA §4.[3]

Before addressing the precise language of Cintas' various arbitration clauses, we briefly recount the procedural history of this arbitration and the underlying litigation. We then set forth the text of Cintas' arbitration clauses, which we analyze in light of governing contract principles, as guided by previous AAA clause construction awards issued by this Arbitrator and others. Based on this analysis, the Arbitrator should find that the Cintas arbitration clauses permit this Arbitration to proceed on both a class and collective action basis.[4]

---

[3] Judge Armstrong ruled in her May 4, 2005 Order that the 55 Original Claimants were required to arbitrate in the Northern District of California pursuant to FAA §4 (which requires a court compelling arbitration under its provisions to set venue for that arbitration in the judicial district where the court sits). The parties still await Judge Armstrong's written order from the October 18 and October 27, 2005 hearings, in which she will presumably state whether the same requirement applies to: 1) the 11 claimants whom Cintas stipulated on June 4, 2004 should also be compelled to arbitrate under FAA §4 (*see* Goldsmith Decl., Exh.18, Stip. & Order, June 9, 2004); and 2) the 48 additional claimants whom Cintas agreed at the October 18, 2005 oral argument should also be compelled to arbitrate under FAA §4. *Id.*, Exh. 23, Tr. of Proceedings, Oct. 18, 2005 at 70:1-71:19, 79:24-80:16, 98:10-19, 99:6-17, 100:15-101:7. Since the 55 claimants who are clearly part of this arbitration are entitled to bring this motion, the scope of claimants actually before this Arbitrator should be briefed at a later time, after the district court has issued its ruling.

[4] If claimants prevail at the present Clause Construction phase, we will next seek class certification of the 19 state law classes (which rest on state laws that in most respects are similar to the FLSA, although some have more limited exemptions). Claimants will also seek conditional certification of this matter as an FLSA collective action, just as Judge Armstrong in the parallel federal lawsuit conditionally certified this case as an FLSA collective action in her November 4, 2003 Order at 1-12, 16. (Goldsmith Decl., Exh. 14).

Although nothing in the Class Arbitration Rules explicitly refers to "collective" rather than "class" action arbitrations, it appears that most arbitrators treat the two as essentially interchangeable for purposes of the arbitrator's analysis at the Clause Construction phase. *See, e.g.*, Goldsmith Decl., Exh. 9, *Goldstein and Ibase Consulting*, AAA Case No. 11 160 02760 03 (Garrison 2004) ("Goldstein"); *id.*, Exh. 7, *Cole and Long John Silver's Restaurants, Inc.*, AAA Case No. 11 160 00194 04 (Hodge 2004) ("Cole"). While claimants agree that it is appropriate for the Arbitrator to decide whether Cintas' arbitration clause permits collective arbitration at the same time it decides whether that clause permits class arbitration, there is no reason why the district court should be asked to review an interim *collective* action decision under Rule 3. The reason the AAA requires judicial review of *class action* Clause Construction and Class

(continued...)

**BACKGROUND**

The underlying lawsuit was filed on March 19, 2003 by 65 plaintiffs, including the 55 Original Claimants. On November 4, 2003, Judge Armstrong conditionally certified that lawsuit as a collective action under the FLSA, and ordered notice sent to approximately 10,000 similarly-situated current and former Cintas drivers throughout the country. That notice, which the Court ordered disseminated after its April 5, 2004 ruling on arbitrability, informed prospective plaintiffs of their right to file a Consent to Sue under Section 16(b) of the FLSA and stated that the Court would later determine which plaintiffs could proceed in court and which plaintiffs must proceed in arbitration on their statutory overtime claims. *See* Goldsmith Decl., Exh. 16, April 23, 2004 Order at 1-7; *id.*, Exh. 17, May 25, 2004 Order.[5]

Judge Armstrong initially set October 21, 2004 as the deadline for filing Consents to Sue. On November 15, 2004, however, the Court extended the opt-in deadline three months to January 15, 2005, and ordered Cintas to post and mail a supplemental notice because Cintas' CEO had improperly sent a letter to all current SSRs attempting to discourage them from opting

---

[4] (...continued)
Certification awards is to protect the due process rights of absent class members. No such protection is required in a collective action, because individual plaintiffs are only bound by the arbitrator's partial and final awards if they affirmatively opt in, as the 1,800 claimants did in this arbitration pursuant to the Court-facilitated notice. *See* 29 U.S.C. §216(b).

[5] The collective action notice provided that SSRs could opt into the district court litigation, and that the Court would subsequently decide which plaintiffs would proceed in court and which must arbitrate:

> On April 5, 2004, the U.S. District Court ruled that the majority of Cintas Route Drivers who join this lawsuit must arbitrate their overtime claims before the American Arbitration Association ("AAA") while others may continue to litigate their overtime claims in court. If you join this lawsuit by filing a timely Consent to Sue as described above, the Court will decide whether your claims will proceed in arbitration or before the court.

Goldsmith Decl., Exh. 17, May 25, 2004 Order, Notice of Collective Action, ¶6.

into the lawsuit. *Id.*, Exh. 19, Nov. 15, 2004 Order at 4-5. By the January 15, 2005 deadline, approximately 2,400 individuals had filed Consents to Sue.

In August, 2003 (five months after plaintiffs filed the original complaint), Cintas moved to compel all plaintiffs to arbitration. More than 2-1/2 years have since passed, but Judge Armstrong has still not finally resolved the parties' disputes over arbitrability (although claimants anticipate that the remaining issues will be resolved in the upcoming order, which will commemorate the Court's oral rulings on October 18 and October 27, 2005).

Judge Armstrong issued her first arbitration ruling on April 5, 2004, in which she found unconscionable and severed from Cintas' various arbitration agreements provisions that: 1) shortened the statutes of limitations for statutory claims; 2) made attorneys' fee awards to prevailing plaintiffs discretionary rather than mandatory, as required by 29 U.S.C. §216(b); and 3) required plaintiffs to pay Cintas' attorneys' fees and costs and arbitration fees if Cintas prevailed. Goldsmith Decl., Exh. 15, April 5, 2004 Order at 18-22, 58-59.[6] Judge Armstrong then granted Cintas' motion to compel arbitration of the overtime claims of 55 of the 65 Original Plaintiffs, while retaining jurisdiction over the remaining plaintiffs (who either did not sign an individual employment agreement with an arbitration clause, or were employed in a state, like Arkansas, under which the entire agreement was unconscionable because it lacked "mutuality," or who were forced to sign their individual arbitration agreements without having any opportunity to review those agreements). *Id.* at 58-59.[7]

---

[6] Although the Court's April 5, 2004 Order only severed those unconscionable provisions under *some* states' laws (while reserving for the Arbitrator the task of determining unconscionability under the remaining states' laws under FAA §2), Cintas informed the Court during the October 2005 hearings that it would not seek to enforce those provisions against any claimants, and the Court accepted Cintas' representation by noting that "Defendants have also indicated they're willing to consent to also severing those provisions." Goldsmith Decl., Exh. 23, Tr. of Proceedings, Oct. 18, 2005 at 14:24-15:10; *id.*, Exh. 21, Mot. to Stay Proceedings (June 3, 2005) at 7-8. Claimants proceed with the understanding that the arbitration clauses have been modified to eliminate those unconscionable provisions.

[7] Plaintiffs in the federal lawsuit also sought relief under ERISA. Judge Armstrong retained jurisdiction over all plaintiffs' ERISA claims, which are outside the scope of the Cintas (continued...)

On May 4, 2005, ruling on plaintiffs' motion for reconsideration, Judge Armstrong clarified that those claimants whom she compelled to arbitrate under FAA §4 were entitled to arbitrate their claims in the Northern District of California, the judicial district in which the court sits. Goldsmith Decl., Exh. 20, May 4, 2005 Order at 11-13 (citing *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941); *Homestake Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003)). The Court further held that it was for the Arbitrator, not the Court, to determine whether Cintas' arbitration clauses prohibit class arbitration. *Id.* at 10 (citing *Bazzle*, 539 U.S. at 452-53).

Once plaintiffs successfully made the point that any arbitration compelled under FAA §4 must be venued in the Northern District of California, Cintas changed its tactics. In an apparent attempt to preserve the arbitration venue issue for later adjudication, Cintas in June 2005 (after the opt-in period closed) asked Judge Armstrong only to "stay" the litigation of the remaining plaintiffs' claims under FAA §3 (which has no venue provision) rather than to "compel arbitration" of those plaintiffs' non-ERISA claims under FAA §4. Judge Armstrong orally granted Cintas' motion on October 27, 2005, but has still not issued her written ruling which, upon issuance, will likely clarify whether any plaintiffs in addition to the 55 Original Plaintiffs have been compelled to arbitrate under FAA §4. *See supra* n.3.

## CINTAS' ARBITRATION CLAUSES

Cintas has modified its core arbitration agreement, known as "Corporate Policy #C-105," on five occasions over the past decade: in 1996, 1999, 2001, 2002, and 2003. (We set forth exemplars of these agreements as Exhibits 1-5 to the Goldsmith Declaration.) The essence of Cintas' agreements has remained unchanged for purposes of clause construction analysis, however.[8]

---

[7] (...continued)
arbitration clauses. *See* Goldsmith Decl., Exh. 16, April 23, 2004 Order at 2.

[8] Each of the 55 Original Claimants signed either the 1996, 1999, 2001, or 2002 versions. Although Cintas is correct that 71 different versions of the arbitration clause are

(continued...)

The 1996 Cintas arbitration clause includes the same basic language that has been repeated almost verbatim in every subsequent version of Cintas' mandatory pre-dispute arbitration agreements. We have italicized the language from that arbitration clause that bears most directly on the parties' Clause Construction dispute – although the *absence* of any language explicitly prohibiting class or collective arbitration itself establishes that claimants did not knowingly or intelligently waive their right to pursue state and federal statutory claims on a representative basis.

Cintas' 1996 arbitration clause provides:

> EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES. Should any dispute or difference arise between Employee and Employer concerning whether Employer or any agent of Employer ever at any time violated any duty to Employee, right of Employee, law, regulation or public policy or breached this Agreement, Employee and Employer shall confer and attempt in good faith to resolve promptly such dispute or difference. Recognizing the importance of having a fair, timely, inexpensive and binding method of resolving any such dispute or difference remaining unresolved after Employee and Employer confer in good faith, Employee and Employer agree that if the dispute or difference remains unresolved after Employee and Employer have conferred in good faith, and if Employee desires to pursue Employee's claims or contentions, *Employee shall submit a timely written request to have such claim, dispute or difference resolved through impartial arbitration conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and held in the county and state where Employee currently works for Employer or most recently worked for Employer.*
>
> *In any such arbitration proceeding, the impartial arbitrator shall apply the terms of this Agreement as written, the Federal Arbitration Act and other relevant federal and state laws*, including time limits on claims, and the party losing the arbitration shall bear the fees and expenses of the American Arbitration Association and the impartial arbitrator. *The impartial arbitrator shall have the*

---

[8] (...continued)
applicable to the 1,800 claimants, *see* Goldsmith Decl., Exh.22, Decl. of Catherine Randall in Support of Cintas' Mot. to Stay Proceedings (June 3, 2005), Exhs. 2-72, Cintas concedes that "almost all" of the arbitration clauses in these additional agreements are "identical to those of the 1996, 1999, 2001 or 2002 agreements." *Id.*, Exh. 21, Mot. to Stay Proceedings (June 3, 2005), at 5-6. To the extent that Cintas' newest 2003 agreements contain a revised arbitration clause, Cintas also concedes that the "operative terms [of that agreement] are substantially similar to the 2002 agreement." *Id.*

> *authority to award to the prevailing party any relief, including damages, costs and attorney's fees, available under relevant laws.*
>
> Impartial arbitration, as provided above in this Paragraph 6, shall be the exclusive, final and binding method of resolving any dispute or difference between Employee and Employer arising from, concerning or relating in any way to Employee's employment with Employer or Employee's separation from employment with Employer. A legal action to maintain the status quo until the arbitration award is rendered or to enforce the agreement to arbitrate or the arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file any lawsuit contending that Employer or any agent of Employer violated any duty, law, regulation or public policy or breached this Agreement.

Goldsmith Decl., Exh. 1, ¶6 (emphasis added).

Cintas' 1999 arbitration clause is almost identical, except that it imposes a one-year statute of limitations for requesting arbitration, limits the employee's "initial share" of the arbitration filing fee to "one day's pay or $100, whichever is less," and eliminates the "loser pays" language, substituting a provision that Cintas will pay all arbitration fees and expenses. Goldsmith Decl., Exh. 2, ¶5. The 1999 clause also modifies the second paragraph to provide that although the arbitrator generally retains "authority to award appropriate relief . . . as available under relevant laws," the arbitrator's authority to award costs or fees against an employee is limited to awarding the equivalent of two days' pay.[9] The 1999 agreement also states that workers' compensation and unemployment benefits claims are not subject to the arbitration clause; and that the arbitrator may reconsider an arbitration award. *Id.*

The 2001 version of the arbitration clause is identical to the 1999 version in all respects. *Id.*, Exh. 3, ¶5. The 2002 version makes only one significant change, stating that the one-year limitations period for submitting a request for arbitration does not apply when the employee alleges a violation of a specific statute with its own statute of limitations. *Id.*, Exh. 4, ¶5. The

---

[9] *Id.*, Exh. 2, ¶5 ("The arbitrator also shall have the authority to award appropriate relief, including damages, costs and attorneys' fees, as available under relevant laws, provided that the Arbitrator cannot direct Employee to pay more than a total of two days' pay as costs, expenses and attorney's fees to Employer, the arbitrator or the American Arbitration Association.").

2003 version specifically enumerates the types of statutory claims an employee might assert that are subject to arbitration, and provides that the agreement is to be construed under the FAA and Ohio law, but otherwise effects no significant changes. *Id.*, Exh. 5, ¶8.

Each version of Cintas' individual employment agreements states that it constitutes the "entire agreement between employer and employee" (except for any compensation or benefits agreements) and can only be modified by a subsequently-executed written agreement of the parties. Each version of the arbitration clause in those employment agreements includes the arbitration-initiation language upon which Cintas primarily relies in opposing class and collective arbitration ("Employee shall submit a timely written request to have such claim . . . resolved through impartial arbitration . . . held in the county and state where Employee currently works . . . or most recently worked . . . ."). No version includes an explicit prohibition of class or collective actions or any reference to class or collective actions. Nor does any version carve out the claimants' statutory right to proceed on a class or collective basis from the arbitrator's broad authority to "apply . . . relevant federal and state laws," "to award . . . any relief . . . available under relevant laws," and to grant any remedy or relief deemed "just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court" (under AAA Employment Rule 34(d)). *See Id.*, Exh. 1, ¶6; *id.*, Exh. 2, ¶5; *id.*, Exh. 3, ¶5; *id.*, Exh. 4, ¶5; *id.*, Exh. 5, ¶8. In marked contrast to the arbitration clauses in Cintas' employment agreements, the arbitration clause in the form rental agreement that Cintas uses with its customers includes an express prohibition on collective or class arbitration of claims against the company: "Any such dispute shall be determined on an individual basis, shall be considered unique as to its facts, and shall not be consolidated in arbitration or any other proceeding with any claim or controversy of any other party." *Id.*, Exh. 29, Standard Uniform Rental and Service Agreement at 2.

Cintas drafted each of the arbitration clauses at issue in these proceedings, which are contained in standardized corporate policies. *See id.*, Exhs. 1-5; *id.*, Exh. 22, Randall Decl.,

Exhs. 2-72. As Judge Armstrong concluded in her initial Order, Cintas was able to compel claimants to sign these agreements because of its vastly superior bargaining strength:

> It would be ludicrous to suggest that the SSRs are on an equal footing with Cintas. The SSRs are individuals seeking employment or further benefits from their current employer. Cintas, by its own admission, is a nationwide business enterprise and a leader in its industry.

*Id.*, Exh. 15, April 5, 2004 Order at 18.

**ARGUMENT**

**Cintas' Arbitration Clause Does Not Forbid Claimants From Proceeding With A Class or Collective Arbitration.**

Because Cintas' arbitration clause is so similar to the clause construed by this Arbitrator in *Sidhu,* we begin with a brief summary of the Clause Construction analysis in that case.

*Sidhu* was a class action overtime case under California law on behalf of a putative class of restaurant managers. As here, the employer's arbitration clause was silent as to class arbitration and authorized the arbitrator to grant all relief that would be available in court, both expressly (by authorizing the arbitrator to grant the same "legal and equitable relief . . . as could a court of competent jurisdiction") and by incorporating the AAA Employment Rules (which provide in Rule 34(d) that the arbitrator may grant any remedy or relief deemed "just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court"). *Sidhu* Clause Construction Award at 2. The *Sidhu* arbitration clause also contained a venue provision stating that any arbitration must be conducted in the "city in which the Employee is or was last employed by the Company," and used singular noun forms (*i.e.*, referring to the "Employee" rather than to "Employees"). *Id.*

The Arbitrator concluded that the arbitration clause in *Sidhu* was ambiguous, because some of its provisions could be read as permitting class arbitration while other provisions could be read as inconsistent with class arbitration. After identifying the arguments on both sides, none of which were independently determinative, the Arbitrator concluded that the ambiguities in the

clause must be resolved against the employer that drafted it. *Id.* The Arbitrator therefore issued a partial final award finding that the *Sidhu* arbitration provision *permitted* class arbitration (without reaching claimants' alternative argument that a prohibition against class arbitration in a statutory overtime case would be unconscionable under applicable state law). *Id.* at 2-3.

The Cintas claimants' Clause Construction arguments are even stronger than the *Sidhu* claimants' arguments, for the seven reasons set forth below.

First, although Cintas' clause, like the clause in *Sidhu*, is silent as to any prohibition against class or collective action, that silence is more significant here, given Cintas' repeated modifications of its agreement in the past decade. Cintas is a legally sophisticated, multi-billion dollar company. Cintas and its attorneys could easily have amended the arbitration clause to prohibit class and collective arbitrations explicitly if that were Cintas' intent (and if Cintas believed that such a prohibition would not result in the agreement being invalidated as unconscionable), just as Cintas changed many other provisions in response to developments in the law of mandatory arbitration to maximize the company's legal rights. *See supra* at 7-9. Cintas was surely aware of the class certification prohibition issue, given the well-publicized controversy over class arbitrations that preceded by several years the Supreme Court's 2003 decision in *Bazzle.* And Cintas had ample opportunity to include express waiver language in the more recent versions of its form arbitration clause. Indeed, Cintas *does* include express language in its form rental agreements with customers prohibiting those customers from arbitrating their disputes against Cintas collectively, indicating that Cintas is well aware how to draft a clear waiver of the right to arbitrate on a class or collective basis (whether or not such a waiver is enforceable). *See* Goldsmith Decl., Exh. 29, Standard Uniform Rental Service Agreement at 2 ("*Any such dispute shall be determined on an individual basis*, shall be considered unique as to its facts, *and shall not be consolidated in arbitration or any other proceeding with any claim or controversy of any other party*.") (emphasis added). Under the circumstances, the absence of explicit prohibitory language in Cintas' employment agreements necessarily indicates that those agreements were *not* intended to deprive employees of their statutory right to engage in class or

collective arbitrations. *See id.*, Exh. 12, *Olson and Rent-a-Center, Inc.*, AAA Case No. 11 10 01831 04 at 2 (Brandt 2005) ("Olson") ("reasonable to conclude" that four-page arbitration clause that addressed conduct of arbitration in considerable detail but said nothing about class arbitration was not intended to prohibit such arbitration); *id.*, Exh. 11, *Medina and GMRI, Inc.*, AAA Case No. 11 160 02409 04 at 5 (Christianson 2005) ("Medina") (silence as to class arbitration should be construed against the party that would most benefit from prohibition on such an arbitration).[10]

Second, it is even clearer here than in *Sidhu* that class and collective arbitration is permitted, because Cintas has taken the position in its federal court filings that its arbitration clause does *not* prohibit class arbitrations. In the fall of 2004, the *Veliz* plaintiffs challenged Cintas' arbitration clauses as unconscionable *to the extent* they were construed as prohibiting class or collective arbitration. To avoid a ruling invalidating the clauses in their entirety, Cintas expressly *denied* that its arbitration clauses prohibit class arbitration. Cintas thus wrote in its opposing brief that "Plaintiffs falsely characterize Cintas' position as being that the arbitration agreements 'preclude class actions,'" and stated that it "does not claim that any language in the arbitration agreements necessarily precludes all class arbitration." Reconsideration Opp. at 17.

Having made these assertions in an effort to avoid a ruling that its arbitration clauses were unenforceable because they prohibited class actions, Cintas may not now take the opposite position that those clauses do in fact prohibit class arbitrations. Whether as a matter of judicial estoppel, equitable estoppel, or waiver, or as further evidence of Cintas' intent not to prohibit class arbitrations, these concessions constitute an additional reason why Cintas' arbitration clauses must be construed as permitting (or not forbidding) class and collective arbitration. *See*

---

[10] Moreover, ordinary principles of contract interpretation preclude the Arbitrator from adding to the plain language of these integrated agreements any new term, much less a term as important as an express waiver of representative arbitration. *See, e.g.*, *Southern Cal. Gas Co. v. Ventura Co.*, 150 Cal.App.2d 253, 257 (1957); *Ratcliff Architects v. Vanir Constr. Mgmt.*, 88 Cal.App.4th 595, 602 (2001); *BMW of N. Am. v. Krathen*, 471 So.2d 585 (Fla. App. 1985); *Cress v. Recreation Servs.*, 795 N.E.2d 817 (Ill. App. 2003); *Brauer v. Trustees of First M.E. Church*, 1 A.2d 409, 410 (N.J. Err. & App. 1938); *Porter v. Columbus Bd. of Indus. Rel'ns*, 675 N.E.2d 1329, 1332 (Ohio App. 1996).

*also* Goldsmith Decl., Exh. 20, May 4, 2005 Order at 9-10 & n.7 (noting Cintas' position that it did not contend that all class arbitration was precluded); *Olson, supra*, at 7 (binding party to in-court representations that its arbitration agreements did not preclude class arbitration, and stating: "any reasonable person hearing a declaration that 'we are not saying they cannot pursue any class claims' would understand [that the party] . . . was saying that class claims are allowed by the agreement"); Goldsmith Decl., Exh. 8, *Cook and Rent-a-Center, Inc.*, AAA Case No. 11 160 01815 04 at 4 (Todd 2005) ("Cook") (same). To allow Cintas at this point to take the opposite position from that it took before Judge Armstrong would impermissibly condone a "litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (applying principles of judicial estoppel).[11]

Third, the arbitration-initiation language in Cintas' agreements cannot reasonably be construed as an implicit prohibition against any claimant proceeding on a class or collective basis. Unlike the clause in *Sidhu*, Cintas' arbitration clauses do not dictate arbitration venue – *i.e.*, where an arbitration under its provisions must be conducted. Rather, Cintas' language is at most a limitation on how an employee may initiate arbitration on his or her own behalf, not a limitation on how claims may be adjudicated once another employee has initiated arbitration on a class basis or a limitation on *joining* another employee's already-initiated arbitration. Just as Cintas' arbitration-initiation language did not trump FAA §4's judicial-district venue requirement, neither can it trump any claimant's statutory rights under §216(b) of the FLSA, or under state and federal class action provisions applicable to the state overtime claims at issue, or

[11] Cintas' concession completely undercuts any argument that its clause prohibits class arbitration because it includes language referring to the "employee" in the singular, rather than to "employees" in the plural form. In any event, although this Arbitrator found in *Sidhu* that the use of singular noun forms created some ambiguity in the parties' intended meaning, other arbitrators have concluded that such usage cannot effect a waiver of the important right to pursue claims on a class or collective basis. *See, e.g.*, *Medina, supra*, at 6; *Cole, supra*, at 7 ("The use of personal pronouns cannot by inference achieve the deprivation of significant rights. . . . Had the drafters intended a specific exclusion of class-action participation, they had the obligation clearly to articulate the exclusion."); Goldsmith Decl., Exh. 6, *Budner and Oats*, AAA Case No. 11 181 00828 04 at 8 (Zimmerman 2004) ("Budner").

under the joinder provisions of Fed. R. Civ. P. 19 and 20 – each of which provide an independent legal basis for similarly-situated Cintas drivers to "join" this arbitration as additional party plaintiffs. Because Cintas does not dispute that *this* arbitration has been properly initiated and that *this* arbitration may proceed in the Northern District of California on behalf of at least *some* claimants, Cintas' arbitration-initiation clause should have no ongoing relevance in the Clause Construction phase of this proceeding.[12]

Even if Cintas had included an actual arbitration-venue clause in its agreements, that clause could not trump the claimants' right to join other Cintas employees' properly-commenced arbitration, much as this Arbitrator determined in *Sidhu*. Under well-established class action principles, absent class members are entitled to participate in another plaintiff's lawsuit, without affirmatively opting in (as long as that class member does not opt out after receiving the class action notice). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808-14 (1985). Under equally well-established FLSA principles, any employee who is similarly situated to an FLSA

---

[12] While the *Sidhu* clause was an actual arbitration venue clause that set forth "the location of arbitration," *Sidhu* at 2, the Cintas clause only contains arbitration-initiation language, stating that an employee may initiate arbitration by submitting a "timely written request" that asks to have an arbitration "conducted in accordance with" the AAA Employment rules and "held in the county and state where Employee currently works for Employer or most recently worked for Employer." That language in Cintas' agreements does not dictate where the arbitration must actually be conducted; only how the request for arbitration must be worded.

That Cintas' arbitration clause governs only arbitration initiation, not venue, is underscored by the analysis in *Richard C. Young & Co. v. Leventhal*, 298 F. Supp. 2d 160, 168-70 (D. Mass. 2003). In that case, the arbitration clause required the parties' "disagreement [to] be submitted for arbitration to the American Arbitration Association in Boston, Massachusetts" – a far more ambiguous clause that could read either as an arbitration-initiation clause or as an arbitration venue clause. The court recognized that this language could be construed either as requiring the request for arbitration to be submitted to AAA's Boston office or as requiring that the arbitration itself take place in Boston. Applying the basic rule that any ambiguity must be construed against its drafter, the court found that the clause limited only the submission of a request for arbitration, and did not operate as a forum-selection clause that required the arbitration to be conducted in Boston. (Although the First Circuit later reversed on the ground that construction of the arbitration clause was the responsibility of the arbitrator rather than the court, it did not comment on the district court's actual construction of that language. *See* 389 F.3d 1, 3-5 (1st Cir. 2004)).

plaintiff may opt in to that plaintiff's existing collective action for unpaid wages or overtime simply by filing a Consent to Sue form in the existing lawsuit, without having to file a separate lawsuit in a court that would have venue over his or her individual claims. *See* 29 U.S.C. §216(b). Nothing in Cintas' arbitration-initiation clause language precludes claimants from joining this existing action as additional class or collective action members or from joining this arbitration as additional parties plaintiff under Fed. R. Civ. P. 19 or 20, any more than the city-by-city venue clause in *Sidhu* precluded a single, consolidated California class arbitration that included absent class members as well as the named class representative. Once Cintas guaranteed its employees access to all legally-available relief, it accepted the possibility that arbitrators appointed under its arbitration clauses could order classwide or collective relief.

The fourth reason why Cintas' arbitration clause cannot fairly be read as forbidding class or collective arbitration is because, as in *Sidhu*, that clause expressly and repeatedly authorizes the Arbitrator to grant all relief and all remedies that a court could make available under state or federal law – a broad grant of authority that is inconsistent with an implied prohibition on class or collective proceedings. Cintas' arbitration clauses specifically provide that the "arbitrator shall have authority to award the prevailing party *any relief* . . . available under relevant laws." Goldsmith Decl., Exh. 1, ¶6 (emphasis added); *see also id.*, Exh. 2, ¶5 ("arbitrator . . . shall have the authority to award *appropriate relief*, . . . as available under relevant laws") (emphasis added); *id.*, Exh. 3, ¶5 (same); *id.*, Exh. 4, ¶5 (same); *id.*, Exh. 5, ¶8 ("arbitrator will have the authority to award either party *appropriate relief*, including damages, costs and attorneys' fees, as available under relevant laws") (emphasis added). Each clause also fully incorporates AAA Employment Rule 34(d), which authorizes the arbitrator to grant any relief deemed "just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court."

As the Supreme Court explained in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 61 n.7 (1995) (in deciding whether the parties' broad arbitration language authorized an arbitrator to award punitive damages), "it would seem sensible to interpret the 'all disputes' and

'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute resolvers to award the same varieties and forms of damages or relief as a court would be empowered to award." (Quotation omitted.) *Accord Cole, supra*, at 11 (construing contract language empowering the arbitrator to "award you anything you might seek through a court of law" as authorizing collective and classwide remedies "as if sought in a court of law"); *Sidhu* at 2 ("any relief" language supports claimants' position that the arbitrator was empowered to award classwide relief under statutes that authorize courts to provide such relief).

Here, because Cintas' arbitration clauses gave the Arbitrator broad authority to exercise the same power to grant relief as a court could exercise, Cintas must have intended to permit the Arbitrator to award relief on a classwide or collective basis. Under the applicable statutes, courts may award classwide or collective relief for claimants' statutory overtime claims against Cintas. The FLSA authorizes collective actions, 29 U.S.C. §216(b), and the state laws at issue permit class actions.[13]

Representative adjudication furthers the vital public policies of state and federal wage laws by ensuring that those laws will be effectively and efficiently enforced. The class and collective action devices afford claimants "the advantage of lower individual costs to vindicate rights by the pooling of resources" and permit "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Thus, they are particularly favored in the context of statutory wage claims. *See, e.g., Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 n.13 (9th Cir. 2003). "In the [FLSA] area particularly, often each individual claim results in a small monetary remedy,

---

[13] *See* Cal. Code Civ. Proc. §382; Colo. R. Civ. P. 23; Conn. Practice Book §9-7 *et seq.*; Ill. Comp. Stat. 5/2-801; Ind. R. Civ. P. 23; Ky. R. Civ. P. 23; Md. R. Civ. P. 2-231; Mo. Rules of Ct. 52.08; N.J. Ct. Rules 4:32-1 *et seq.*; N.Y. CPLR §901 *et seq.*; Ohio R. Civ. P. 23; Kan. Stats. §60-223; Mass. R. Civ. P. 23; Minn. R. Civ. P. 23; N.M. R. Civ. P. 1-023; Pa. R. Civ. P. 1701 *et seq.*; R.I. Sup. Ct. R. Civ. P. 23; Wash. Sup. Ct. Civ. R. 23; Wis. Stat. §803.08.

whereas class actions often result in practice and programmatic change that benefit all employees." *Walker v. Ryan's Family Steak Houses Inc.*, 289 F. Supp. 2d 916, 926 (M.D. Tenn. 2003), *aff'd*, 400 F.3d 370 (6th Cir. 2005); *see also Goldstein, supra*, at 3 ("The class or collective action device is particularly well-suited to wage claims, as most employees are unlikely to bring such claims as a single plaintiff for fear of retaliation or loss of job, and most terminated employees are unlikely to seek or obtain counsel to challenge either the termination or terms and conditions which applied during employment."). In short, courts and arbitrators have repeatedly endorsed class and collective relief as a vital tool to vindicate employees' statutory employment rights. Because Cintas authorized the Arbitrator to grant all relief available under the applicable statutes, it necessarily conferred the power to allow this arbitration to proceed on a class or collective action basis.

Fifth, Cintas' arbitration clause, as a standardized form agreement drafted by the employer, must be construed in a manner that furthers rather than impairs the employees' reasonable expectations. *See, e.g.*, Restatement (Second) of Contracts, §211 cmt. f ("Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation."); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283 (2005) (consumers not bound by class arbitration waiver in arbitration provider's rules incorporated by reference in arbitration clause). The federal court in *Veliz* has already found that it would be "ludicrous" to think that claimants had equal bargaining power to Cintas, their employer and a nationwide leader in its industry. Goldsmith Decl., Exh. 15, April 5, 2004 Order at 18. Not only are claimants far less sophisticated than the drafters of Cintas' arbitration clauses, but it is not reasonable to believe that Cintas' employees recognized, when they signed the arbitration agreements, that they were waiving rights to adjudicate statutory claims on a representative basis when the agreements were completely silent about the matter.

Much as the *Klussman* court recognized that few customers were likely to research the arbitration rules and understand that they effected a class arbitration waiver, 134 Cal. App. 4th at

1299-1300, here the Arbitrator should recognize that only the most diligent and sophisticated SSRs might even have considered whether anything in Cintas' arbitration clauses might be construed to waive their right to participate in class or collective arbitration. Any such statutory waiver should be set forth clearly, not based on inferences from oblique language drafted by a sophisticated employer and its lawyers. *See Cole, supra*, at 7 (waiver of the important right to arbitrate statutory wage claims collectively, as opposed to individually, should be set forth in clear language, rather than derived from ambiguous language that does not refer specifically to collective arbitration at all).

Sixth, to the extent Cintas' arbitration language is ambiguous concerning class or collective procedures, that ambiguity must be resolved against Cintas as its drafter. Arbitration clauses, like other contracts, are subject to the "common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono*, 514 U.S. at 62. "The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Id.* This rule stems from the recognition that "[w]here one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party," and to "have reason to know of uncertainties of meaning." Restatement (Second) of Contracts, §206, cmt. a.[14]

In *Mastrobuono*, the question was whether plaintiffs waived their right to seek punitive damages by agreeing to arbitrate any disputes that arose. Similarly, in this case the question is whether claimants waived their equally important right to resolve statutory wage claims on a representative (and thus far more efficient, less costly, and less burdensome) basis. Here, a finding that claimants waived their right to arbitrate statutory wage claims collectively would set up a process of adjudication that is wholly inconsistent with Judge Armstrong's prior rulings and

---

[14] Indeed, corporate drafters might deliberately leave an arbitration clause silent on the question of class arbitration precisely to "keep their options open" before arbitrators and courts. To protect the unknowing employee from waiving important rights where such waiver is not perfectly clear from the face of the corporation's arbitration clause, the arbitrator should construe such silence against "the party who would most benefit from silence being found to preclude class action arbitration." *Medina, supra*, at 5.

the public policies underlying claimants' statutory claims. As the Supreme Court recognized in *Hoffman-LaRoche*, resolving statutory wage claims on a collective basis allows claimants to pool their resources and litigate common questions of law and fact most efficiently. 493 U.S. at 170. And here, Judge Armstrong already found that claimants are similarly situated with respect to their claims against Cintas when she conditionally certified the federal case as an FLSA collective action:

> In sum, at this juncture there is enough of a nexus between plaintiffs and the individual SSRs for the Court to conditionally certify the class. The plaintiffs and individual SSRs are proceeding on the same legal theory and have been subject to the same blanket policy by the same employer. None of the alleged differences that Cintas raises at this juncture undermine that factual nexus. In fact, they strengthen it.

Goldsmith Decl., Exh. 14, Nov. 4, 2003 Order at 8; *see also id.*, Exh.17, May 25, 2004 Order at 1. Requiring some 1,800 claimants who have *already* been found to be similarly situated as a matter of the law and facts to initiate hundreds of separate arbitrations would not only exponentially increase claimants' expenses and eliminate the economies of scale inherent in proceeding collectively, but it would also give rise to an extraordinarily high risk of inconsistent adjudications on what are recognized to be common questions.

Fragmenting this arbitration into thousands of separate individual claims would be inconsistent with the public policies favoring collective and class adjudication of common statutory wage claims and, as a practical matter, would have the improper effect of insulating Cintas from any consequences for its conduct. *See Ingle*, 328 F.3d at 1176 n.13 ("Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to retain the benefits of its wrongful conduct. . . . [A]n arbitration agreement that automatically eliminates the right to a class-wide proceeding would have the 'substantial' effect of contravening the principles behind class action policies and 'chilling the effective protection of interests common to a group.'") (citing *Keating v. Superior Court*, 31 Cal. 3d 584, 609

(1982)).[15] To allow Cintas to take advantage of ambiguity in its clauses that it has surely known was there all along by construing the clauses to forbid class or collective arbitration would not only "effect a deprivation of significant rights," *Cole, supra,* at 8, but would also undermine enforcement of the laws and public policies at issue. Applying common principles of contract interpretation, the Arbitrator should therefore conclude in this case, as in *Sidhu* and as is required under the laws of every state at issue, that any ambiguity in Cintas' language must be construed against the drafter, thus leading to the conclusion that Cintas' arbitration clauses do *not* forbid, but instead permit, class and collective arbitration.[16]

Seventh, and finally, Cintas' arbitration clauses should be construed as permitting class and collective arbitration because to construe them as prohibiting such arbitration would compel

---

[15] Forcing claimants who have already been found similarly situated to arbitrate individually would also be inconsistent with the common principle in FLSA collective actions that each claimant need not prove liability or damages through individual testimony. The courts have long permitted representative testimony in collective actions regarding an employer's practices common to the group. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 149 F.2d 461, 461 (6th Cir. 1945), *rev'd on other grounds*, 328 U.S. 680, 680 (1946) (eight of 200 employees testified); *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (representative testimony of 2.5% of workers); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 722-23, 743-51 (2004) (representative testimony of 11% of workers).

[16] *See, e.g., Badie v. Bank of America*, 67 Cal. App. 4th 779, 798, 801 (1998); *accord BellSouth Comm. Sys., LLC v. West*, 902 So.2d 653, 657 (Ala. 2004); *Allstate Ins. Co. v. Avis Rent-a-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997); *Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Development, LLC*, 873 A.2d 898, 904-05 (Conn. 2005); *City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla. 2000); *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998); *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004); *Southern Bell Tel. & Tel. Co. v. Chappelle*, 415 S.W.2d 826, 827 (Ky. 1967); *Truck Ins. Exch. v. Marks Rentals, Inc.*, 418 A.2d 1187, 1191 (Md. 1980); *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 455 (Mich. 2003); *Trimble v. Pracna*, 176 S.W.3d 706, 714 (Mo. 2005); *Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004); *Benjamin Moore Paint Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094. 1099 (N.J. 2004); *Computer Assocs. v. U.S. Balloon Mfg. Co.*, 782 N.Y.S.2d 117, 119 (App. Div. 2004); *State v. Philip Morris USA Inc.*, 618 S.E.2d 219, 225 n.14 (N.C. 2005); *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003). Many arbitrators have applied the construe-ambiguities-against-the-drafter rule in determining clause construction. *See Sidhu, supra*, at 2; Goldsmith Decl., Exh. 10, *Jones and Genus Credit Mgmt. Corp.*, AAA Case No. 11 181 0295 05 (Green 2005) ("Jones"); *id.*, Exh. 12, *Olson, supra*, at 1, 4; *id.*, Exh.*6, Budner, supra*, at 8; *id.*, Exh. 7, *Cole, supra*, at 4; *id.*, Exh. 9, *Goldstein, supra*, at 1.

the finding that they are unconscionable under the laws of many states. When the *Veliz* plaintiffs called to the Court's attention that Cintas might assert that its clauses prohibited class or collective arbitration, thus inviting a finding that the clauses were unconscionable, Cintas told the Court that it did *not* contend that its clauses precluded all class arbitration. Reconsideration Opp. at 17. By taking this position in court, Cintas both neatly sidestepped any finding that would have invalidated its arbitration clauses and persuaded Judge Armstrong not to reach the question of whether Cintas' arbitration clauses actually did forbid class or collective arbitration.

Now, however, Cintas can no longer defer a decision on the question of how its arbitration clauses should be construed. An employer should no more be permitted to prohibit class arbitrations implicitly than, under many states' laws, it can prohibit class arbitrations explicitly.[17] "If an employer cannot write a provision precluding class arbitration and have it enforced . . . , it is inconsistent to find that an Employer's silence on this subject could achieve a different result." *Medina, supra*, at 6.

Nothing in Cintas' arbitration clauses prohibits class or collective arbitration, as Cintas has conceded. Therefore, to avoid the otherwise inevitable conclusion that the arbitration clauses are unconscionable under the laws of many of the relevant states, the Arbitrator should construe Cintas' arbitration clauses, as it construed the clause in *Sidhu*, to permit this arbitration to proceed on a class and collective basis.

---

[17] *See, e.g., Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005); *Ingle*, 328 F.3d at 1176 (California law); *Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002); *BellSouth Mobility LLC v. Christopher*, 819 So. 2d 171 (Fla. App. 2002); *Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812 (Ill. App. 2005), *appeal allowed*, 839 N.E.2d 1025 (Ill. 2005); *Lozada v. Dale Baker Oldsmobile*, 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000); *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. App. 2005); *Tillman v. Commercial Credit Loans*, 2005 WL 2295111 (N.C. Super. 2005); *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161 (Ohio App. 2004); *Luna v. Household Fin. Corp.*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002).

## CONCLUSION

For the foregoing reasons, the Arbitrator should find that the 1996, 1999, 2001, 2002 and 2003 Cintas arbitration agreements permit this arbitration to proceed on a class or collective basis.

Dated: February 8, 2006

Respectfully submitted,

Michael Rubin
Scott A. Kronland
Eileen B. Goldsmith
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN

/s/ Michael Rubin
Michael Rubin

177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
Fax: 415/362-8064

*additional counsel on following page*

Attorneys for Claimants Paul Veliz *et al.*

Albert H. Meyerhoff, Esq.
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
355 South Grand Avenue, Suite 4170
Los Angeles, California 90071
(213) 617-9007 - Office
(213) 617-9185 - Fax

Theresa M. Traber
Vanessa Eisemann
Jocelyn Sperling
TRABER & VOORHEES
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
(626) 585-9611 - Office
(626) 577-7079 - Fax

Nancy Juda, Esq.
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, D.C. 20036
(202) 822-2024- Office
(202) 828-8528- Fax

Theodor J. Pintar
Steven W. Pepich
James A. Caputo
Lawrence A. Abel
Helen I. Zeldes
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 231-1058 - Office
(619) 231-7423 - Fax

## CERTIFICATE OF SERVICE

**CASE:** Veliz et al. v. Cintas Corporation et al.

**CASE NO.:** American Arbitration Association Case No. 11 160 01323 04

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within action. My business address is 177 Post Street, San Francisco, California 94108.

On February 9, 2006, I served the following document(s):

**CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF**

**DECLARATION OF EILEEN GOLDSMITH IN SUPPORT OF CLAIMANTS' CLAUSE CONSTRUCTION OPENING BRIEF**

on the parties, through their attorneys of record, by sending true copies as shown below for service as designated below:

By Federal Express: I am readily familiar with the practice of Altshuler, Berzon for the collection of overnight courier mail and I caused each such envelope to be delivered to Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the office of the addressee on the next business day. I deposited this package at the Kearny Street location.

| **ADDRESSEE(S)** | **PARTY REPRESENTED** |
| --- | --- |
| Mark C. Dosker<br>Michael W. Kelly<br>SQUIRE, SANDERS & DEMPSEY L.L.P.<br>One Maritime Plaza, Third Floor<br>San Francisco, CA 94111-3492<br>Facsimile: 415.393.9887<br>Mdosker@SSD.com<br>Mkelly@ssd.com | Counsel for Defendant,<br>Cintas Corporation, *et al.* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this February 9, 2006 at San Francisco, California.

/s/
Holly Miller

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2. That on May 3, 2006, declarant served the DECLARATION OF STEVEN W. PEPICH IN SUPPORT OF THE *VELIZ* PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE ACTIONS UNDER 28 U.S.C. §1407 by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3. Pursuant to Rule 5.12 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, copies will be filed in each district court in which an action is pending that will be affected by this motion.

4. That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of May, 2006, at San Diego, California.

Bonnie M. Naiditch

BONNIE M. NAIDITCH

Docket: 1781 - In re Cintas Corp. Overtime Pay Arbitration Litigation
Status: Pending on / /
Transferee District: Judge: Printed on 04/18/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Dosker, Mark C.<br>Squire, Sanders & Dempsey, L.L.P.<br>One Maritime Plaza<br>Suite 300<br>San Francisco, CA 94111-3492 | => Cintas Corp.*; Plan Administrator for the Cintas Partners' Plan* |
| Pepich, Steven W.<br>Lerach Coughlin Stoia Geller Rudman & Robbins, LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, CA 92101 | => Abel, Robert J.*; Abrahamsen, David J.*; Ackerman, Nicholas*; Adams, Randall*; Addison, Jack*; Adkins, Donald*; Adolph, Joseph W.*; Agler, Bradley*; Agostini, Jason*; Agozzino, Vince*; Ainsworth, Daniel E.*; Albright, Ryan*; Alegria, Roberto Carlos*; Alert, Thomas Eugene*; Alfred, Chad*; Alioto, Brandon*; Allen, Alice*; Allen, Joseph*; Allen, Judd*; Allen, Sean*; Allred, Jonathan*; Allshouse, Michael Lee*; Allspach, Gary*; Alves, Louis*; Ames, Christopher J.*; Ammon, Ryan*; Amott, Troy*; Anaya, Issac*; Anaya, John*; Anderson, Darren Mitchell*; Anderson, Jeffrey*; Anderson, Matthew*; Anderson, Michael*; Anderson, Randy*; Anderson, Robert D.*; Anderson, Zebulan (Zeb)*; Andree, Nathan J.*; Andrews, Joe*; Andrews, Robert*; Ansink, Jr., John O.*; Aranegui, Gus*; Arango, Rick*; Arms, Rick*; Armstrong, Bryan*; Arroyo, Heriberto*; Arroyo, Sijifredo*; Artley, Stephen Paul*; Arvin, Harold W.*; Arvizu, Ronald*; Ash, Brian*; Atkins, James*; Augustin, Matthew*; Ault, Travis M.*; Avalos, Agustin*; Avalos, Guillermo*; Avery, Ivan Edward*; Avila, Hector*; Aybar, Jeffrey*; Bachman, Sean*; Bachmann, Kenneth J.*; Badgerow, Gary*; Bailey, Wayne C.*; Baker, Brian*; Baker, Joshua*; Baldwin, Daniel S.*; Baldwin, David*; Banks, Joe L.*; Baptist, Kenneth W.*; Barbarotta, Sam*; Barfield, Donald Ray*; Barlow, Stephen*; Barnard, Justin*; Barnes, Gregg*; Barnes, Relton*; Barr, Jeff*; Barrett, Jason*; Bartz, Michael*; Bass, Donnie*; Bassett, Dennis*; Bauer, Jr., Harold D.*; Baughman, Casey*; Baumer, Christopher*; Baxter, Aaron*; Beal, Kevin*; Bean, Robert W.*; Beard, Everett G.*; Beard, Mitchell Aron*; Beck, Joseph*; Beckham, Mark*; Bedard, Patricia*; Bell, Wade*; Bell, William Christopher*; Bender, Daniel Lee*; Benecke, Stephen C.*; Benedict, Tyrone Charles*; Benson, Josh*; Bentley, Hank*; Bereza, John*; Berlage, Joseph E.*; Berna, Brent*; Berry, Paul*; Bersch, Warren*; Bertrand, William*; Biase, Joseph D.*; Bickham, John D.*; Bickmeyer, Warren*; Bierach, Conrad*; Bigbee, Gregory Cole*; Bigelow, Jason Scott*; Bippus, David W.*; Bishop, Janice M.*; Bissin, Brooke A.*; Bitz, William J.*; Bivins, Michael*; Blackburn, Jessica Lynn*; Blackman, Matthew L.*; Blackmon, James Kurt*; Blaha, Christopher*; Blaisdell, Philip Daniel*; Blake, Thomas Flynn*; Blanchard, Bernard L.*; Blanco, Noe*; Blenden, Chad M.*; Blessing, Jay*; Bobeck, Craig*; Bobo, Brian*; Bobola, Kenneth*; Bodenmiller, George*; Bohn, David*; Bolden, Alfonso*; Bolen, Jr., Silas Ray*; Boman, Jason*; Bonacorsi, Daniel J.*; Bonds, Jr., Jackie Ray*; Booker, Kathleen*; Booth, Danel*; Borawski, Scott*; Borrmann, Kevin*; Boslaugh, Kevin*; Bostick, Tony L.*; Bostwick, Noah*; Bova, Jr., John S.*; Bow, Jonathon James*; Bower, Kevin*; Bowles, Jr., Robert F.*; Bowles, Randall*; Bowman, Daryl*; Boyd, Ricko Lonnell*; Boyle, Michael P.*; Boynton, Kevin*; Braaten, Bob*; Bracamontes, Ralph*; Bradley, Tory*; Brandt, Dean*; Branscome, Thomas Scott*; Brantley, Michael*; Bray, Michael C.*; Brewster, James*; Bridges, Larry Daniel*; Bridges, Thomas Allan*; Brien, Joseph*; Brinlee, Robert*; Brinning, Brandon*; Briseno, Manuel G.*; Bristow, Mark*; Brite, Bobby*; Britt, Tony*; Brock, Stephen*; Brook, Dezmon*; Brooks, Antoine Alonzo*; Brooks, Chris*; Brooks, Stephen*; Brown, Chris*; Brown, Christopher*; Brown, Danny L.*; Brown, Jonathan*; Brown, Jr., Gregory*; Brown, Jr., James*; Brown, Michelle*; Brown-Donald, Cory*; Brown-Phillips, Mary E.*; Browning, Jennifer L.H.*; Browning, Stuart*; Bruno, Stuart*; Brunson, Gregory*; Bryam, Jason Albert*; Bryant, Gregory S.*; Buddie, Brian*; Buen, Brian*; Bullard, Brandon Eugene*; Bunderson, Jason*; Burcke, Robert*; Burgess, Scott*; Burghart, Vince McClain*; Burke, Christopher*; Burke, Donald*; Burke, Michael*; Burress, James Allen*; Burt, Jonathan*; Burton, Crezone*; Bush, David J.*; Bustamante, Esequiel*; Butler, Dustin Lee*; Butler, Jeffrey A.*; Buttner, Christopher C.*; Buuck, Greg M.*; Cabrera, Jorge*; Cady, Chad Jason*; Cagle, Lucas Hunter*; Cala, Peter James*; Caldwell, Scott Patrick*; Callahan, John*; Calvin, Dean*; Camden, Christopher*; Cameron, Bruce*; Cameron, Chris*; Campion, Michael H.*; Campos, Gustovo G.*; Cantu, III, Leonel*; Carelock, Bryan*; Carney, Sr., Eric*; Carr, Boyd*; Carr, Ray Anthony*; Carrier, Gerardo*; Carrillo, Javier*; Carter, Charlie*; Carter, Jr., Nelson*; Carter, Kevin*; Carter, Matthew S.*; Carter, Stephen W.*; Carter, Terry*; Carthon, Ricky*; Caruso, Kenneth*; Cash, Jason*; Casselman, Dana*; Cassens, Everett W.*; Castens, Richard*; Castleberry, Don*; Caton, Clinton*; Caudill, Michael*; Cavagnaro, Tina A.*; Cavanaugh, Craig Robert*; Cavazos, Jesse*; Cervantes, Marcos*; Chainuck, Mark*; Chalmers, Scott*; Chambers, Sr., |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Broderick*; Chambers, Veronica*; Chapman, Brent*; Chapman, David*; Chappell, Chad*; Charatin, Daniel*; Checchia, Davide*; Chesser, Larry D.*; Chew, William*; Chirino, Humberto*; Choate, Doug*; Christensen, Eugene*; Churches, Dennis L.*; Cingel, Timothy*; Cintron, Michael S.*; Citrano, Chris*; Clark, Brian*; Clark, Jr., Gerald*; Clark, Michael D.*; Clark, Shon D.*; Clayton, William W.*; Cleaves, Sr., Jason*; Clouse, Daniel*; Cobble, James*; Cockreham, Colin*; Coe, Steven M.*; Colavito, Marc*; Colby, Jeffrey*; Colca, Keith*; Cole, Dennis*; Colihan, Robert*; Collazo, Edwin Upcano*; Collins, Bobby*; Collins, French*; Colunga, Orlando*; Comaty, Kevin*; Combs, Gary*; Conigland, James W.*; Conley, Marty D.*; Connelly, James*; Conner, Michael*; Conti, Matthew*; Contreras, Carlos Javier*; Contreras, Javier*; Contreras, Ricardo*; Conway, Merle*; Cook, David*; Coombs, Jason M.*; Cooper, Erinn*; Cooper, III, Daniel*; Cooper, Leon Allen*; Cooper, Shirlene*; Cope, Jr., James Andrew*; Coppock, II, Lonnie*; Corelli, Charles*; Cornelius, Randall M.*; Cornett, Michael*; Cortes, Gustavo*; Cortes, Jr., Juventino*; Cortez, Sonny*; Cothran, Matthew*; Cothran, Robert A.*; Cotter, Bruce*; Cottini, Jeffrey Louis*; Cottrell, Michael*; Cottun, Jon-Mikal*; Coulon, Kevin*; Coulson, Jeffrey M.*; Cousins, Willie*; Covert, Roderick*; Cowles, Barbara*; Cox, Michael*; Cox, Shane A.*; Coy, Aaron*; Craig, John*; Craig, John Maurice*; Crawford, James Ryan*; Crawford, Nathaniel T.*; Crawford, Wesley*; Crews, Chad*; Crismond, Jeff*; Crivello, Tony*; Croft, III, Virgil Lee*; Crook, Robert*; Crosby, Germain*; Crumley, Timothy*; Cruz, Carlos R.*; Cruz, Rene*; Cruz, Samuel*; Culley, Donna J.*; Cumley, Michael*; Czamara, Jamie*; D'Amato, Pasquale*; Dahbu, Dahbu*; Dahl, Shawn L.*; Dahmke, Robert*; Dailey, Thomas, L.*; Dakos, Michael D.*; Dalsass, Mark*; Damron, II, Dan*; Danelle, Dana*; Dangerfield, Raymond*; Daniel, Roger*; Daniels, Jason*; Dardon, Jose*; Dauria, Philip*; Davis, Jason*; Davis, Jeffrey C.*; Davis, Robert Samuel*; Davison, Dustin*; Dawson, Dan*; Dawson, Keith C.*; Dawson, Timothy*; Day, Jackie Nelson*; Day, Patrick*; Debano, Craig*; DeBilzan, David*; DeBose, Erroll A.*; Deely, Daniel*; Dees, Chris C.*; DeFelix, Matthew J.*; Degroot, Robert J.*; Delaneo, David*; Delauro, Michael*; Delgado, Oscar R.*; Delort, John*; DelSorbo, Frank*; Dempsey, James*; DeMulling, Douglas*; Denise, Matthew*; Dennis, Marc*; Derenzo, Christopher*; DeRosia, Troy L.*; Dervin, John H.*; Desantis, Michael E.*; Devlin, Thomas*; Diaz, Albert*; Diazgranados, Humbert*; Dickerson, Jimmy*; Dickson, Kevin*; Diebler, Bryan*; Dilalvo, Carl*; Dillard, Marcus*; Dillon, Michael James*; Dimac, Jasmin*; Dipaolo, Derrick*; Dixon, III, Roy*; Dixon, Jean Lande*; Dixon, Timothy A.*; Dodge, Benjamin*; Dodson, Shirley*; Dodson, Tommy*; Doherty, Jr., John F.*; Dolan, John*; Doll, Russell*; Dollhopf, Thomas N.*; Dominquez, Frank Christopher*; Dompke, Alvin*; Donahue, Christopher*; Donegan, Michael*; Dool, Mark E.*; Dorris, Jermaine*; Doss, Robert*; Dossin, Ernest*; Downey, George*; Downey, James*; Drahos, James*; Dravland, David*; Drenckhahn, Larry A.*; Drendel, Lynn M.*; Driggers, Ashley*; Drought, Debra*; Drummond, Michael*; Ducey, Kevin Edward*; Duell, Clarence*; Dunham, Matthew H.*; Dunlap, Travis*; Durbin, Joseph Len*; Durbin, Phillip*; Durkin, R. Patrick*; Dwarte, Mark Daniel*; Dyer, John*; Eagle, Ryan Daniel*; Earl, Luis R.*; East, Joel*; Eastman, III, John James*; Eaton, Sean*; Ecija, Allan*; Edenfield, Samuel*; Edney, Jeff*; Edwards, Anthony*; Edwards, Douglas*; Edwards, Joseph E.*; Edwards, Mark*; Edwards, Wayne*; Eggebeen, John*; Ehrman, Steve*; Eldridge, Kendall*; Elliott, William*; Ellis, Sean*; Ellsworth, Jeffery*; Emberland, Douglas Brian*; Emmerling, Robert*; Eperthener, Andrew W.*; Erazo, Aliexer*; Erickson, Daniel*; Ericson, Robert*; Ernsperger, Jerry*; Ernst, Gregory*; Escovar, Jason*; Esparza, Jr., Sam*; Esparza, Pablo*; Esparza, Paul*; Estrada, Richard*; Etzler, Michael*; Evans, Edward*; Evans, Randall*; Evans, Terry C.*; Fabrizio, Samuel*; Fairley, Reginald D.*; Fancher, Thomas*; Farris, Greg*; Farthing, Kenneth*; Fast, Randolph*; Faul, Karl*; Faul, Shane*; Faux,, Jamie A.*; Favret, J. Michael*; Feagin, Mark Anthony*; Feehan, Scott*; Feeney, Patrick*; Fellin, Paul Lewis*; Ferreira, Carlton Michael*; Ferrell, Rick*; Ferrer, Hector*; Fielding, Scott*; Fields, Rickey*; Fillingame, Alan*; Finch, James*; Fincham, Jon Curtis*; Finnie, William D.*; Firer, Ruslan*; Fisher, Alfred*; Fisher, Nicholas*; Flagg, James*; Flanagan, Robert*; Fleek, James*; Flintom, Frank*; Flores, Eduardo*; Flores, Roger*; Floyd, Ricky*; Fogg, Jr., Norman*; Follen, James*; Folsom, James*; Folz, Jason*; Fonseca, Ricardo*; Fontenot, Jr., Gustave*; Forbes, Wanda*; Ford, John E.*; Ford, Robert C.*; Foreman, Michael E.*; Fortune, Scott*; Foster, H. Berk*; Foto, Jacob J.*; Fourman, Julia*; Fournier, Steven*; Fragassi, Shawn*; Fraginals, Mauricio*; France-Kelly, Timothy*; Franklin, Henry*; Franks, Glenn Mark*; Franks, Jerome*; Frashier, Dylan M.*; Frazer, Joshua*; Frazier, Joseph*; Freeman, Nathan*; Freeman, Scott*; French, Derek*; French, James David*; French, Ronald*; Fridley, Michael*; Frierson, David M.*; Frierson, Jeremaine*; Fries, Rick*; Frink, David*; Fuentes, Michael Anthony*; Fuerst, Craig*; Fugua, William*; Fulce, Jr., Raymond*; Gable, Jaymes*; Gage, Mark*; Gagne, William*; Gaines, Ronnie*; Galicia, Tomas*; Galik, Grant*; Gallo, Russ*; Galloway, Jr., Phillip |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
| --- | --- |
| | R.*; Galloway, Robert C.*; Gambill, Kevin W.*; Gamez, Ruben*; Garcia, Anthony*; Garcia, Edmundo*; Garcia, Edward P.*; Garcia, Jerry*; Garcia, Jr., Adan*; Garcia, Lossan*; Garcia, Tracy Ramos*; Gardner, Brian*; Gardner, II, Paul J.*; Gardner, Jr., Ronald*; Garity, Thomas David*; Garland, Kelby*; Garrett, Ricky*; Garrett, Shawn*; Garrett-Webb, Melinda*; Garrison, Lamont*; Gartin, Chad*; Gaskins, Stephen*; Gastelum, Jesse*; Gates, Sammy*; Gaul, Michael*; Gay, Michael Keith*; Gedinsky, Kevin*; Geer, Robert L.*; Geile, John*; Geissinger, Michael B.*; Gemmati, Michael*; Gemmati, Phillip J.*; Genther, Brandon*; Gentry, David Lewis*; Gentry, Joshua*; Gentry, Wyman*; Giamalva, Jr., Frank*; Giammusso, Carrie*; Gibson, Tyler John*; Gienapp, Dalero*; Gilbert, Brian*; Gilchrist, Joe*; Gill, John*; Gilliland, Brent*; Gilmore, James*; Gilmore, Josh*; Glover, Robert*; Godoy, Karlo*; Goemaat, Anthony*; Goida, Jeffrey*; Goines, Pamela*; Golden, Daniel*; Gomez, Jeffrey*; Gomez, Vincent*; Gonce, Raul Jose*; Gonzales, Albert*; Gonzales, Jesus P.*; Gonzalez, Ivan*; Gonzalez, Yovani*; Goodman, Stuart S.*; Gordineer, Donald*; Gordon, Todd*; Goslau, Richard*; Govica, Eric S.*; Graham, Luke D.*; Grant, Bryan*; Gray, Glenn E.*; Green, Jason Warren*; Green, Steven*; Green, Wayne*; Greene, III, Tilmon C.*; Greene, Jeff*; Greene, Les*; Greer, Russell*; Gregor, Scott Patrick*; Gregory, Jonathan A.*; Gremillion, John Alex*; Griffin, Donald Allen*; Griffin, Michael*; Grim, Matt*; Griner, Joseph Lee*; Grisby, Jr., Vernon*; Gritsipis, Antonios*; Groves, Jeffrey*; Grucza, Troy D.*; Gubala, Thomas*; Gugino, David George*; Gula, Jon*; Gullett, Rickey L.*; Gunckle, Richard E.*; Gurnee, Kimberly*; Guthrie, Terrance P.*; Guys, Jr., Ralph*; Hager, II, Thomas*; Hale, Russell*; Hall, Eric*; Hall, Renee*; Hall, Robert*; Haloski, David M.*; Hamby, Anthony Dean*; Hamilton, David*; Hamilton, Jason C.*; Hammer, Bruce*; Hammerberg, Tammy*; Hammons, Cody A.*; Hanson, Dan*; Hanson, Sarah*; Hanson, Sheree*; Hanthorn, Brian Scott*; Hardin, Mark Lee*; Harper, Kevin*; Harper, Steven*; Harris, Cheryl*; Harris, Dwight*; Harris, John Michael*; Harris, Jr., Raymond Mac*; Harris, Kim*; Harrison, DeCarlo*; Hart, Laurence*; Hart, Mike*; Hart, Scott*; Hartwell, Joshua*; Hassan, Ghassan*; Hauk, Walter*; Hawkins, Randal Kevin*; Hawkins, Ryan*; Hawthorne, Delondon*; Hayes, Clyde*; Hayes, Jeremiah*; Haynes, John A.*; Hays, Alan*; Heaney, Joseph*; Heath, Caderis*; Hedgpeth, Kelly Chad*; Hehr, II, William W.*; Hein, Brandon K.*; Heinrich, Eric*; Helbert, Matthew C.*; Held, David*; Hellen, Richard*; Helton, Daniel*; Henderson, Stephen*; Henderson, Toni*; Hendry, Kami*; Hennigan, Jordan*; Henning, II, William D.*; Hennon, Charles*; Hermes, Darren M.*; Hermiller, Chad*; Hernandez, Jorge*; Hernandez, Victor Hugo*; Herndon, Jr., James Grady*; Herr, David*; Herrera, Efrain*; Herrington, Harvey*; Herron, James*; Herzog, Greg*; Hess, Brian Keith*; Hewett, Robert*; Hewitt, Joshua*; Hickey, Charles Terry*; Hildreth, Barrett*; Hill, Brad Duane*; Hill, Daniel*; Hill, Dustin L.*; Hill, Jr., Steven*; Hilliard, Michael*; Hilyer, Donald Keith*; Hines, Bruce*; Hipp, Randall S.*; Hoaglund, Edward*; Hodge, Bobby C.*; Hoefle, H. David*; Hoekman, Peiter*; Hoffman, Dana*; Hoffman, Terry G.*; Hoffmann, Glenn*; Hohenstein, Rodney*; Holbrok, Ryan Scott*; Holcombe, Lavatus*; Holland, Daryl*; Holland, Jason*; Holloman, Carvell*; Holloway, Dayton*; Holmes, Willie*; Horn, Ben*; Horn, John*; Horne, Timothy*; Horton, Thomas*; Hosack, Richard*; Hoskins, III, Joseph Wiley*; Hotchkiss, Benjamin*; Houha, Leonard*; Householder, Chad*; Howe, Ronald*; Howe, Scott*; Howe, Steven*; Howell, Sidney*; Howell, Tracy*; Hubbard, Tim*; Huber, Peter James*; Huertas, Jr., Wilfredo*; Hughes, John M.*; Hughes, Stephen*; Hughes, Stephen Richard*; Hulet, James*; Hulse, Gregory D.*; Humbles, Derrick*; Humphrey, Alex*; Hurst, Craig*; Hurtado, Alvaro*; Hurtado, Daniel*; Hussmann, Reuben John*; Hutson, Nick*; Hutto, Herman*; Indorf, Neal*; Infante, Angel*; Ingram, Brandon*; Isaacs, William Keith*; Ivins, Justin*; Jackson, Colby L.*; Jackson, James*; Jackson, Marvin*; Jackson, Michael David*; Jackson, Rex O.*; Jackson, Sergeo*; James, Beau*; James, Jack*; James, Joseph*; James, Patricia*; Jamieson, Ronald*; Jamison, Matthew Leonard*; Jaseckas, Kenneth*; Jaslove, Jeremy*; Jay, Jeff*; Jeansonne, Joel*; Jedrysek, Erik Stephen*; Jefferson, David K.*; Jenks, Todd*; Jennings, Timothy W.*; Jewell, Marcus Angel*; Jimenez, Ricardo*; Jinings, Nick*; Johanson, Sean M.*; Johnlouis, Albert*; Johnson, Courtney*; Johnson, Darrin*; Johnson, Deon*; Johnson, Douglas*; Johnson, Eric*; Johnson, Eugene*; Johnson, Jadarthia*; Johnson, James*; Johnson, Jeff C.*; Johnson, John D.*; Johnson, Kwan*; Johnson, Lamont*; Johnson, Mark H.*; Johnson, Martin F.*; Johnson, Stephanie*; Johnson, Thomas S.*; Johnson, Todd*; Joiner, Robert*; Jones, Brian*; Jones, Clifford*; Jones, Craig*; Jones, David Darryl*; Jones, David E.*; Jones, Greg*; Jones, I, Michael*; Jones, John Corey*; Jones, Joshua*; Jones, LaShawn*; Jones, Paul*; Jones, Paul R.*; Jones, Shane M.*; Jones, Thomas Roy*; Jordan, Albert*; Judd, Randy*; Kadilak, Ken*; Kaeg, Silverio Ted*; Kandal, Donald*; Karr, Brian*; Kassen, Dale Allen*; Kelleher, Eugene*; Kelley, Timothy James*; Kelly, Amber*; Kelly, William*; Kennedy, Glen*; Kerlavage, Jr., Joseph R.*; Kern, Jason*; Kilby, Kevin*; Kincaid, Don*; Kincaid, Eric R.*; King, III, Richie*; King, Thelenious James*; King, Willie |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | A.*; Kingsley, Hugh J.*; Kinkead, Michael*; Kintler, Joseph*; Kinto, Thomas*; Kirby, Jason*; Kirksey, Joel L.*; Kirwan, Thomas*; Klement, Robert*; Klimm, Robert W.*; Kloes, William*; Klutch, Thomas*; Knapp, Jason*; Kohl, David*; Kolby, Randall*; Koltys, Jason*; Konieczny, Edward*; Kornelink, Bret Michael*; Koste, Brian*; Koste, Jason Lyle*; Kostiuk, Adrian*; Kougl, Alan F.*; Kozelisky, Zachary*; Kraft, David*; Krause, Christopher*; Kremer, Fred*; Kreutz, Patrick*; Kropp, James J.*; Krueger, Joshua*; Kuba*; Kulessa, Gordon Scott*; Kull, Christopher*; Kunda, Matthew*; Kunz, John*; Labastille, Sergio*; Labrecque, Ronald*; Lackey, Christopher Alan*; Ladd, Jr., Carl Louis*; LaFond, David*; Lagreca, David*; Lahey, Kevin M.*; Laissle, Sean M.*; Lambert, Jeffrey*; Lancaster, Kurt*; Lanci, Edward*; Lanclos, Joseph*; Landry, Anton*; Landry, Jr., Steve*; Langdon, James Craig*; Lange, John C.*; Lanigan, Brian David*; Lanning, Brian*; Lantrip, Shannon*; Lapp, Mario T.*; LaPrell, Bill*; Larque, Renee*; Laskowski, Jr., Thomas M.*; Lassiter, Greg*; Laster, Michael*; Lauer, Mark*; Laurain, Eric*; Lavergne, IV, Theodore J.*; Lawrence, Sean Warren*; Lawson,k Brady*; Leazier, Linda*; Leben, Erik*; Ledbetter, Sr., Thomas Jap*; Ledsworth, Donald*; Lee, Kevin*; Leeder, Christopher*; Leinberger, Robert Lee*; Lemanski, Frank*; Lewis, Donald*; Lewis, Kelvin T.*; Lewis, Roger*; Lewis, Ronald Dee*; Lewis, Russell*; Lewman, Lori*; Lickliter, Charles*; Liktor, William*; Liles, Ron*; Line, Larry L.*; Link, Timothy*; Linkey, James Joseph*; Linn, Michael*; Lippold, Geoffry*; Lipscomb, III, Leonard*; Lishman, John*; Lisiakowski, Jody*; Literal, Jr., Darrell R.*; Litvack, Adam*; Livernois, Michelle*; Livingston, Daniel*; Lizarraga, Enrique*; Lloyd, Noel*; Lodewyck, David*; Lombardo, Jason*; Long, Ernest*; Long, Jr., Thomas*; Long, Phillip*; Longoria, Robert James*; Longstaff, Gregory*; Looney, Jr., Ron*; Lopez, Adan*; Lopez, David*; Lopez, Gilbert*; Lopez, Juan Sanchez*; Lopez, Roberto*; Loranger, Matt*; Lounsbury, Rodger*; Lovatt, Bob*; Love, Sean P.*; Lovett, Shannon*; Lovins, Todd Alan*; Lowell, Joseph*; Lubrano, Anthony*; Ludwig, Jeffrey*; Luna, Gilbert*; Lupo, Thomas*; Lutz, James Patrick*; Mackelburg, Kevin*; MacLagan, Jeffrey Todd*; MacMillan, Joseph*; MacPetrie, Bonnie*; Maddox, Jeffrey Heath*; Madison, Brandi*; Madrid, Isaac Casper*; Magee, Charles Eric*; Magee, Robert Glenn*; Maglosky, Ken*; Mahnken, Leon*; Maldari, Joseph*; Maldonado, Daniel*; Maldonado, Jr., Donald J.*; Maloch, Andrew*; Manale, III, Ted*; Manfre, Peter*; Mangus, Ryan Edward*; Manion, John*; Marcoux, Joseph*; Marino, Joseph*; Mariscano, Angelo*; Marks, Marcus*; Marrufo, Gilbert*; Martel, Chad J.*; Martell, Jr., Charles*; Martensen, Martin*; Martin, Douglas*; Martin, Frederick Lamont*; Martin, Jeffrey S.*; Martin, Joe K.*; Martin, Jr., Richard Earl*; Martinez, Jose*; Martinez, Miguel*; Maser, Richard*; Mason, Christopher R.*; Mason, Joseph*; Mason, Jr., Charles E.*; Masoner, Jeffrey*; Massey, Jason K.*; Mastin, Scott R.*; Mathis, Antonio D.*; Matthews, Duane*; Matthews, Traco*; Maule, John*; Mauro, Michael*; Maves, Cythia*; Maye, Charles*; Mayweather, Victor*; McAfee, Noritaka Kevin*; McAlister, Michael*; McArdle, Thomas J.*; McAshan, Sr., Craig E.*; McBeth, Mike*; McCabe, Steven*; McCain, Barry Preston*; McCain, Kenny P.*; McCarney, Randy*; McCarthy, Carl*; McClellan, Rogers*; McClendon, Stephen*; McCoins, Aaron R.*; McComiskie, Sean*; McCoy, Michael Eric*; McCraw, Michael Anthony*; McCue, Jr., Edward*; McCune, Dave*; McDaniel, Chester*; McDaniel, David L.*; McDermott, Eric*; McDermott, Kenneth*; McEldowney, Wendell*; McFadden, Eric*; McFall, Jr., Jeffrey Wayne*; McGee, Jr., Richard*; McGhee, Todd*; McGinley, Eileen M.*; McGuire, Tim*; McKee, Bradley J.*; McKee, Brian*; McKinney, Duane*; McKinney, Raymond Dale*; McLaughlin, Robert*; McNamara, Sr., Michael Lee*; McNeela, Tim*; McNemar, Sean P.*; McNiven, Steven*; McQuigg, Anson*; McRoy, David Linton*; Mecum, Andrew O.*; Medeiros, IV, Joseph Camara*; Medeiros, Michael*; Medina, Cesar*; Meeker, William A.*; Mejia, Robert*; Mekionis, Leonardas*; Melendez, Edwin*; Memmott, Derek Johnson*; Mendoza, Adrian*; Mendoza, Carlos T.*; Mercado, Jonathan*; Merchant, David*; Mertens, James*; Metheney, II, Edward*; Meyer, John*; Meyers, Richard*; Michelfelder, John*; Migdol, Fred*; Miguel, Alexander Eduardo*; Mikulski, Zenard W.*; Miller, Harvey*; Miller, Jeffrey*; Miller, Josh*; Miller, Jr., Edward*; Miller, Lance A.*; Miller, Randy*; Miller, Troy A.*; Milloy, Cameron Elias*; Mills, Vilera*; Miner, Stephen E.*; Minor, Jack McLean*; Miranda, Jr., Alberto*; Misback, Mark*; Mitchell, David Andrew*; Mitchell, Lawrence F.*; Mitchell, Walter*; Moch, Jeffrey*; Molero, Jorge*; Monroe, Kirk Lee*; Montanez, Jr., Christino S.*; Monteith, Kevin Neil*; Montez, Eddie*; Montez, Tony*; Montgomery, Brian Edward*; Monzon, Jose R.*; Moon, Jerry*; Moore, Brian*; Moore, Gary Brandon*; Moore, II, Ronald Calvin*; Moore, Mark*; Moore, Robert*; Moots, William Brian*; Moran, Kaile*; Moravitz, Ryan*; Morazan, Rodolfo*; Morell, Jr., Carl T.*; Moreno, Michael*; Moreno, Ramon*; Moreno, Rogelio*; Morford, Edward*; Moriarty, Patrick*; Morris, Allen Louis*; Morris, Craig E.*; Morris, Dale*; Morrison, Lori Ann*; Moser, Michael Shane*; Moss, Darrell*; Moss, Lawrence*; Moss, Randell*; Mowry, Greg*; Moye, Jr., Ben*; Mueller, Bryan Michael*; Muellner, Lee*; |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Mullin, John*; Mullins, Michael*; Mullins, Tony F.*; Munday, Stacie L.*; Muniz, Eloy Pedro*; Munn, Brian*; Munoz, III, Juan*; Murphy, II, Joseph*; Murphy, Joe*; Murphy, Matthew*; Murphy, Michael*; Musselwhite, James*; Myers, David*; Napoli, Ross*; Narbone, James*; Navarijo, Clint*; Navarro, Stephen*; Neboyskey, Christopher*; Negrete, Enrico*; Nelson, Mark N.*; Nelson, Tyrick D.*; Newcomb, Christopher*; Nichols, Jennifer*; Nichols, Rusty N.*; Nichols, Tracy*; Nichols, Victor*; Nicholson, III, Joseph*; Nicolai, Lowell R.*; Nicotero, III, Ross*; Nieves, Jr., Julio*; Nordstrom, Kevin*; Norris, Leonard N.*; Novak, Michael J.*; Novatnak, Robert*; Nucci, Lisa*; Nunez, Danny*; Nutall, Leman*; Nye, Timothy*; O'Connell, Stephen*; O'Keefe, Michael B.*; O'Nan, Kelly Leo*; O'Neill, Brian*; Oblinger, Chris*; Oertel, Joseph Michael*; Offenberger, Greg S.*; Ogden, Andrew*; Ohler, Chris*; Okolovitch, Richard*; Oliver, Richard*; Olli, Jr., Mark*; Olson, Christopher Todd*; Olson, Jamie*; Orgeck, Daniel*; Orosco, Salvador*; Orsini, Chris*; Ortega, Chris*; Ortega, Richard D.*; Ortiz, Andres*; Oscypala, Andrew*; Osman, Jack*; Osman, Michael*; Ospina, Fabian*; Otero, Joseph Scott*; Otis, Daniel*; Overloop, Trent Van*; Overman, Alonzo K.*; Overton, Neil*; Owen, Steven*; Owens, Edward*; Pacyna, Glen*; Padgett, Jason*; Padron, Raymond*; Pagan, Michael Angel*; Pagani, John*; Pain, Eugene R.*; Palma, Harry*; Panebianco, Richard*; Paradis, Barry*; Parker, Benny*; Parker, Jr., Eddie Lee*; Parker, Scott*; Parkins, Felipe*; Parks, II, Daniel Lee*; Parra, Raymond*; Parrish, Harry*; Parson, III, Barney*; Parsons, Jeffrey D.*; Partain, Phillip*; Parus, Blase*; Pascual, Todd*; Paske, Brad L.*; Patterson, Casey*; Patton, Darrin*; Pavia, Brian M.*; Peace, Jarrod*; Pearson, Melvin*; Pedigo, Brent*; Peek, Michael W.*; Pellerito, Michael J.*; Pelley, Jonathan*; Pena, Jr., Daniel*; Penn, Charles*; Perdomo, Jose Anibal*; Perreira, Hector Josephs*; Perry, Alfred*; Perry, Timothy*; Perry, Xavier*; Perzak, Theodore*; Pettit, Douglas*; Petty, Raymond*; Petty, Robert*; Phillips, Jason*; Phillips, Jeffrey*; Pianelli, Anthony*; Pick, Jr., Theodore*; Pickett, John C.*; Pieper, Terry*; Pierce, Glen H.*; Pilgrim, Todd*; Pinkston, Brad*; Pirkey, Donald M.*; Plotino, Vincent*; Plush, III Donald Ray*; Podsiadlo, Andrew*; Poke, Jeffrey T.*; Polk, Gerald*; Polo, Jr., Omar*; Pomales, Juan*; Popp, Richard*; Poquette, Gery D.*; Porta, Jonathen*; Porta, Terry*; Porter, Christopher*; Porter, Robert Darrell*; Postell, Dominique Douglas*; Potechko, Carl*; Potteiger, Robert*; Pottichen, Jr., William F.*; Powers, Juan*; Prejean, Barney*; Prescia, Salvador*; Prewett, Jeff*; Price, II, Bobby Joel*; Price, James Alan*; Price, Jason*; Prieur, Michael*; Primerano, David*; Prince, Bobby L.*; Prohoroff, Kance*; Prosser, Michael*; Provance, Thomas*; Puckett, Rodney*; Purcell, Cecil*; Purdy, Russell Edward*; Puzzo, Natalie*; Quarrie, Thomas A.*; Quigley, James*; Quinn, Michael*; Quinn, Steven*; Quiroz, J. Adam*; Rabine, David*; Rambo, Steven*; Ramirez, Brett*; Ramirez, Jeronimo*; Ramos, Richard*; Randall, Kyle Richard*; Rapplean, Kurt*; Rasmussen, Glen*; Rasmussen, Jon*; Rasmussen, Russell*; Rauch, Darren*; Raulerson, Roy S.*; Raymond, Thomas*; Redmon, Rolondo D.*; Reeder, James A.*; Reedy, Jr., Robert*; Reese, Jr., Charles*; Reid, James Kevin*; Reid, Randall A.*; Reid, Tracy*; Reinwald, Ken*; Reither, Matthew*; Remsburg, Aaron*; Reno, Roy T.*; Resta, Andrew Lee*; Rettke, Kevin*; Reveles, Atanacio*; Reyes, Joe Michael*; Richard, Dennis M.*; Richards, Anthony*; Richards, Gerald A.*; Richards, Hopeton*; Richards, James*; Richardson, Ron*; Richardson, Ronald*; Richie, David*; Ricketts, Michael*; Rieck, Anthony*; Riley, Brian*; Rivera, Carlos*; Rivera, Gabriel*; Rivera, Jr., Ernesto*; Rivera, Mark*; Rivera, Ramon*; Rivera, Richard A.*; Rivero, Alberto L.*; Rizzo, Jason*; Rizzo, Jr., John*; Roberts, Mark D.*; Roberts, Richard*; Robertson, Andrew*; Robinette, Scott*; Robins, Sam*; Robinson*; Robinson, Antonio*; Robinson, Larry Keith*; Robinson, Patrick Dontae*; Robinson, Paul*; Robinson, Ryan M.*; Robinson, Von D.*; Rocha, Dominic*; Rodarte, Richard*; Rodela, Mario M.*; Rodriguez, Daniel*; Rodriguez, III, Eluterio*; Rodriguez, Jose Luis*; Rodriguez, Richard*; Rojas, IV, Raymond A.*; Rolfe, William*; Rolko, Edward J.*; Roman, Pedro J.*; Romero, Jesus*; Romero, Joe*; Romie, Anthony*; Rorick, Michael*; Rose, David B.*; Rose, Steve*; Rosell, Daniel*; Rosenberger, Sherry L.*; Ross, Michael A.*; Ross, Ray*; Ross, Timothy*; Roston, Lisa*; Rouco, Jr., Lazaro A.*; Rousseau, William Henry*; Rowan, Rodger L.*; Roy, Larry*; Rubens, Rene*; Rucinski, Jr., Gary*; Rudd, James Daniel*; Rumpf, Michael*; Russell, Gregory*; Russell, Michael E.*; Russo, Marc*; Ruta, Charles*; Ryan, Christopher Scott*; Saavedra, Roy*; Salazar, Gregory M.*; Salazar, Horacio*; Salerno, Ronald*; Salo, Timothy D.*; Samuels, Michael Jerome*; San Juan, Larry*; Sanabria, Anthony*; Sanchez, Jesus R.*; Sanderson, Michale*; Sandoval, Manuel*; Sandoval, Max*; Sandoval, Steven*; Santalucito, Vincent*; Santana, Victor*; Santiago, Jr., Genaro*; Santos, Allen*; Santos, Carl*; Santos, Daniel*; Santos, David*; Saucedo, Amanda*; Saulog, Mario B.*; Savage, Chris*; Savage, Roderick*; Savas, James*; Savino, Robert*; Sayles, Kevin M.*; Schaal, Christopher Werner*; Schaffer, Timothy*; Schaper, Matt*; Schepers, Edwin*; Schlabach, Richard A.*; Schlamp, Renee Laura*; Schneider, Anthony*; Schneiter, |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | John A.*; Scholl, Michael*; Schomburg, James F.*; Schroeder, Doug*; Schubert, Robert D.*; Schultz, Kent L.*; Schumacher, Zachary P.*; Schwartz, Garry*; Schwartz, Glenn*; Schweiss, John*; Scialanca, David*; Sciscio, Jesse Paul*; Scott, Joshua*; Scott, Jr., Bobby Joe*; Seamons, Arthur Franklin*; Sebastiano, John*; Secora, Jason*; Seech, Jason*; Seitz, John W.*; Sepulveda, Vito*; Serrano, Jr., Ruben*; Sessoms, John*; Sexton, Jerry*; Seymour, Adam*; Shaw, Aaron*; Shaw, Brenda*; Shaw, Randy*; Sheck, Troy P.*; Sheehan, Daniel V.*; Sheehy, Andrew*; Sheets, Scott*; Sheets, Steven*; Sheipline, Richard*; Shelton, Brian James*; Shepard, Perry*; Sheperd, Dan*; Shepherd, Michael*; Shepherd, Rebecca*; Sheppard, Elton*; Sherfield, Robert Eric*; Sheridan, Timothy*; Shirey, Richard (Cres)*; Shonk, Jay Daniel*; Shook, Jared W.*; Shores, Wayne Matthew*; Shortencarrier, Daniel*; Shufford, Jr., Robert Lee*; Siekkinen, John Davin*; Siena, Michael A.*; Sigl, Jonathan*; Silva, Donald R.*; Silvas, David*; Simmons, Jr., Elliott F.*; Simmons, Mario*; Simmons, Robe*; Simms, Garnet*; Simon, Jermaine*; Simpson, Harold*; Simpson, Heather L.*; Sipres, Joe C.*; Sizemore, Glen Arthur*; Skuratovich, David*; Slade, William*; Slay, David*; Sledz, Steven*; Sloane, Richard*; Slocum, Ray*; Slone, Jr., Ralph*; Smeltzer, Terry*; Smiley, Almond*; Smith, Barbara*; Smith, Benjamin N.*; Smith, Bruce P.*; Smith, Carll*; Smith, Carolton Lamar*; Smith, Clayton Robert*; Smith, Daniel*; Smith, Darrin*; Smith, Glenn*; Smith, III, Sam*; Smith, James Earl*; Smith, Jonathan*; Smith, Kelly*; Smith, Michael*; Smith, Michael R.*; Smith, Michael S.*; Smith, Michael W.*; Smith, Patrick*; Smith, Paul Douglas*; Smith, Phillip A.*; Smith, Richard*; Smith, Scott Allen*; Smith, Sr., Terrence Y.*; Smith, Vincent*; Smith, Walter*; Snell, Richard*; Snyder, Greg*; Solano, Jaime*; Solorio, Juan*; Solorzano, Alvaro*; Soroka, Allen*; Sossong, Thomas*; Sothern, T. Gregory*; Southerland, Todd Daniel*; Spinale, James*; Spivey, Randy*; Springston, Jeff*; St. John, Barry*; Staggs, James Ervin*; Staggs, Kevin*; Stamper, Fred*; Stancil, Michael*; Staples, Shade*; Stark, Michael*; Starkey, Aaron*; Starnes, David*; Starr, Garett*; Stearns, Tommy*; Steel, Jesse L.*; Steele, Donald Wayne*; Stefani, John*; Stefanick, Jared*; Steiner, William*; Stellato, Eric*; Stephens, Jeff*; Stephens, Randall*; Stewart, Clarence*; Still, Dexter*; Stillfield, Miguel*; Stokes, Bryan*; Stokes, Lavonzelle*; Stoklosa, Keith*; Stoklosa, Michael*; Stone, John*; Stoppel, Tracy*; Storie, Kenneth S.*; Story, John*; Strader, Christopher*; Straka, Chris*; Streng, Derek*; Stroup, Carl D.*; Stuckey, Jarred D.*; Sturgis, Tom*; Sturkie, Rodney*; Stutz, Shiloh*; Sudol, Wes*; Sullivan, Robert*; Summers, Tony*; Sumpter, III, Max*; Sumption, Trevor*; Sutter, John Michael*; Sweet, Daniel T.*; Swenson, Todd*; Swett, Jr., Steven T.*; Sword, Richard*; Sylvester, I, George*; Sylvia, Chris*; Tackett, David*; Talbert, Jr., Ralph E.*; Tantillo, Stephen*; Tapia, Joseph*; Tarantola, Thomas*; Tatum, Christopher*; Taunton, John Logan*; Taveras, Luis*; Taylor, Donald E.*; Taylor, Kurt H.*; Teague, Eric D.*; Tenney, Sandy*; Tepe, Jeffrey K.*; Terrell, Antwan*; Theis, Thomas*; Theisman, John*; Theriault, James*; Therrien, Bernard*; Thoma, Michael*; Thomas, Christopher W.*; Thomas, Ernest L.*; Thomas, Gerry*; Thomas, III, George*; Thomas, Jack Darren*; Thomas, Jr., James*; Thomas, Theodore*; Thompson, Joe*; Thompson, Mark*; Thompson, Robert*; Thompson, Tommy*; Thompson, Wayne*; Thornhill, II, Larry*; Tiegen, Jason*; Tillison, Tony Demario*; Tilseth, Steven*; Tisdel, Edward E.*; Tokish, Nicholas*; Tomaszewski, Scott*; Tomkinson, John P.*; Tompkins, Brian*; Tooley, Jimmy Ray*; Toone, Marc A.*; Torrez, Julian*; Torris, III, Leonard R.*; Tow, Christopher*; Travis, Jason*; Treft, Harold*; Trimble, Vassandral*; Truax, Keith*; Truman, Scott*; Tucker, Cary*; Tully, Jr., John*; Turner, Daniel Scott*; Tusing, Troy*; Tussey, John Rile*; Twitty, Derrel*; Tyrka, Peter*; Uballez, Aaron R.*; Uber, Gregory Steven*; Ulloa, Hector*; Underwood, Matthew*; Upshaw, Jobette T.*; Urbanczyk, Kenneth*; Uschold, John E.*; Vaitu'u, Jr., Ulualo*; Vallette, Charles*; VanAuken, Ralph*; Vance, Adam*; Vanderkuyl, Christopher John*; Vanderpool, William Ed*; Vandervort, Steve*; Vasquez, Juan*; Vasquez, Ruddy*; Vassau, Jeff*; Vazquez, Fabian*; Vega, Jaime*; Veliz, Paul*; Venable, Gary*; Venable, Kevin*; Vergara, Gerardo*; Vermille, Stephen*; Verucchi, Keith*; Vesey, Brena*; Vetsch, Todd*; Vick, Johnnie Lee*; Vickless, Dave*; Villapudua, Bernard*; Villegas, Ignacio*; Vo, Tuan Phi*; Von Coppenolle, Greg*; Voss, Todd*; Vulaj, Victor*; Wakefield, Keith*; Waldorf, Michael*; Waldschmidt, Jeffrey R.*; Walker, Anthony S.*; Walker, Frank Thomas*; Walker, Willie*; Wallace, Andrew*; Wallace, Jacob*; Wallace, Jason*; Walston, Jeff*; Walters, Lynn Dee*; Ward, Edwin*; Warner, Andre L.*; Washington, Monte*; Washington, Sharmane Quontrel*; Washington, Valtorian Evander*; Wasmer, Tade L.*; Wasylik, Thomas*; Watkins, Bradley Steven*; Watson, Demond*; Webb, Thomas*; Weeks, Matthew Jason*; Weinert, Fred K.*; Weisbecker, Stephen*; Weiss, Matthew*; Wells, John*; Wenner, Cade T.*; West, Clint*; West, Michael*; Westover, Steve*; Wetoszke, Douglas*; Whalen, Jeremy Edward*; Wheaton, David*; Wheeler, James Richard*; Whitcomb, Frederick D.*; White, Anthony*; White, Brian*; White, James*; White, Jr., Joseph*; White, Jr., Richard Allen*; White, Lonnie*; White, Matthew*; White, |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Phillip Joel*; Whitener, Jessy*; Whiteoak, Jay R.*; Whitfield, Charles Lee*; Wick, Matthew*; Wickman, Steve*; Wiehl, Steven*; Wiggins, Raiford F.*; Wildeman, James*; Williams, Andre*; Williams, Barry C.*; Williams, Candice*; Williams, Charles Anthony*; Williams, Christopher*; Williams, Damon*; Williams, Edward*; Williams, James*; Williams, Jeffrey Lee*; Williams, Joel*; Williams, Kelan L.*; Williams, Larry James*; Williams, Paul*; Williams, Robert*; Williams, Sam*; Williams, Shannon Lee*; Willis, Rufus L.*; Wilmoth, Brandon*; Wilson, David*; Wilson, Jason L.*; Wilson, Jr., Ronald*; Wilson, Robert N.*; Wilson, Robert Reed*; Wilson, Ronald Joseph*; Wilson, William A.*; Wilton, Jeffrey Dean*; Winans, Sr., Ronald*; Winberry, john*; Windom, Randy L.*; Wingo, Ryan Glenn*; Witoske, Richard*; Witty, Aaron Paul*; Wobbrock, Jeffrey Craig*; Wolf, Erik*; Wolf, JoAnn M.*; Wolfe, Jay Christopher*; Wolner, Timothy*; Wood, Lendon*; Wood, Mark Dolton*; Wood, Michael Lane*; Wood, Robert*; Wood, Robert Lane*; Woodfin, Kenneth E.*; Woods, Jr., Earl C.*; Woodson, Mark William*; Woody, Ronald*; Wookey, Gene*; Woolwine, Eric*; Wragg, Mark Richard*; Wright, Jerry*; Wright, Terry*; Xaros, Arthur*; Yarbrough, Gary*; Yates, Charles B.*; Ybarra, Louis*; Ymaya, Cesar*; Yontz, Robert*; Young, Jr., John W.*; Young, Richard*; Youngbrandt, Stefan*; Yowell, William*; Zacharias, Michael*; Zadnick, Aaron M.*; Zall, Bradley*; Zapata, Fernando*; Zarbaugh, Ruth Ann*; Zavala, Edwin*; Zayas, Jr., Hector*; Zeda, Moises*; Zermeno, Oscar*; Zigler, Ryan*; Zygarlicke, Sarah R.*; Zytkowicz, Michael* |
| Rubin, Michael<br>Altshuler Berzon Nussbaum Rubin & Demain<br>177 Post Street<br>Suite 300<br>San Francisco, CA 94108 | => Capuchino, Neal*; Gray, Charles Leroy*; Reed, David W.* |
| Traber, Theresa M.<br>Traber & Voorhees<br>128 North Fair Oaks Avenue<br>Suite 204<br>Pasadena, CA 91103 | => Baudier, Jr., Ramon J.*; Dixon, Jr., Billy Ray*; Jones, Gerald*; Rowell, Ronda* |